UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSHUA ADAM SCHULTE,<br><br>                Plaintiff,<br><br>                -v-<br><br>UNITED STATES OF AMERICA, TIMOTHY VALENTINE, JOHN BARRETT, BRIAN THIROWAY, MICHAEL SINKVICH, MARK BURNS, MICHAEL GETCHEY, JAMEY WELCH, and UNKNOWN BOP OFFICERS THAT HAVE NOT YET BEEN IDENTIFIED,<br><br>                Defendants. | 20 Civ. 2795 (PGG) (GWG) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

                                            AUDREY STRAUSS
                                            United States Attorney for the
                                            Southern District of New York
                                            86 Chambers Street, 3rd Floor
                                            New York, New York 10007
                                            Tel.: (212) 637-2633
                                            E-mail: tara.schwartz@usdoj.gov

TARA SCHWARTZ
ELLEN BLAIN
Assistant United States Attorneys
– Of Counsel –

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ............................................................................................................................ 1

    I.    PLAINTIFF'S ALLEGATIONS ................................................................................ 1

    II.    PROCEDURAL HISTORY ....................................................................................... 3

LEGAL STANDARD .................................................................................................................... 4

ARGUMENT .................................................................................................................................. 5

    I.    THE *ABBASI* DECISION SIGNIFICANTLY LIMITED THE AVAILABILITY OF A *BIVENS* REMEDY ............................................................................................... 5

    II.    THE COURT SHOULD NOT CREATE A NEW *BIVENS* REMEDY IN THIS CASE BECAUSE IT PRESENTS A NEW *BIVENS* CONTEXT AND SPECIAL FACTORS COUNSEL HESITATION .......................................................................................... 8

        A.    Plaintiff's Claim Presents a Meaningfully Different Context from the Three Prior *Bivens* Claims Recognized by the Supreme Court ................................................. 9

        B.    Special Factors Counsel Against Creating a *Bivens* Cause of Action Here ......... 12

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Abdoulaye v. Cimaglia,* No. 15 Civ. 4921 (PKC), 2018 WL 1890488 (S.D.N.Y. Mar. 30, 2018) .................................................................................................................................. 11, 15

*Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009) .......................................................................... 7, 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 4, 5, 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 1, 4

*Bell v. Wolfish,* 441 U.S. 520 (1979) ........................................................................................ 10, 14

*Bush v. Lucas*, 462 U.S. 367 (1983) .......................................................................................... 11, 14

*Caidor v. Onondaga Cty.*, 517 F.3d 601 (2d Cir. 2008) ................................................................. 5

*Cantor Fitzgerald v. Lutnick*, 313 F.3d 704 (2d Cir. 2002) .......................................................... 4

*Carlson v. Green*, 446 U.S. 14 (1980) ................................................................................... passim

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ....................................................... i

*Davis v. Passman*, 442 U.S. 228 (1979) ........................................................................ 6, 7, 9, 11

*Florence v. Bd. of Chosen Freeholders of Cty. Of Burlington*, 566 U.S. 318 (2012) .................. 10

*Graham v. Connor*, 490 U.S. 386 (1989) ..................................................................................... 10

*Hudson v. Palmer*, 468 U.S. 517 (1984) ....................................................................................... 10

*Martinez v. Aycock-West.*, 164 F. Supp. 3d 502 (S.D.N.Y. 2016) .................................................. 5

*Minneci v. Pollard*, 565 U.S. 112 (2012) ..................................................................................... 13

*Morgan v. Shivers*, No. 14 Civ. 7921 (GHW), 2018 WL 618451 (S.D.N.Y. Jan. 29, 2018) . 11, 14

*Morrison v. United States*, No. 17 Civ. 6779 (WHP), 2019 WL 5295119 (S.D.N.Y. Oct. 18, 2019) ........................................................................................................................................ 12

*Ramirez v. Tatum*, No. 17 Civ. 7801 (LGS), 2018 WL 6655600 (S.D.N.Y. Dec. 19, 2018) ....... 11

*Samson v. California*, 547 U.S. 843 (2006) ................................................................................. 10

*Sykes v. Bank of Am.*, 723 F.3d 399 (2d Cir. 2013) ....................................................................... 5

*Turkmen v. Ashcroft*, No. 02 Civ. 2307 (DLI) (SMG), 2018 WL 4026734 (E.D.N.Y. Aug. 13, 2018) ........................................................................................................................................ 12

*Wilkie v. Robbins*, 551 U.S. 537 (2007) .................................................................................... 8, 11

*Zigler v. Abbasi*, 137 S. Ct. 1843 (2017) ............................................................................... passim

**Statutes**

Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 *et seq* ..................................................... passim

Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e .......................................................... 13

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 1, 4

Defendants Timothy Valentine, John Barrett, Brian Thiroway, Michael Sinkvich, Mark Burns, Michael Getchey, and Jamey Welch (together, the "Individual Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff Joshua Schulte's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff filed this action against the United States, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq.*, as well as against the Individual Defendants, Federal Bureau of Prisons ("BOP") corrections officers, pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiff claims that on March 8, 2020, at the Metropolitan Correctional Center ("MCC"), the Individual Defendants conducted a search of his person and cell as a result of BOP officials' suspicion that a gun had been smuggled into the facility. Plaintiff alleges that the Individual Defendants used excessive force during the search, which caused him multiple injuries including a dislocated shoulder and cut wrists. For the reasons explained below, Plaintiff fails to state a *Bivens* claim because the Supreme Court has not recognized a *Bivens* remedy against the Individual Defendants under the circumstances alleged here, and special factors counsel hesitation against implying one. As a result, the amended complaint should be dismissed against the Individual Defendants.

## BACKGROUND

### I. PLAINTIFF'S ALLEGATIONS[1]

Plaintiff is a federal pretrial detainee housed at the MCC. (*See* Dkt. No. 33 ("Amended Complaint" or "Am. Compl.") 2). According to the Amended Complaint, on the morning of

---

[1] The Individual Defendants accept Plaintiff's factual allegations in the Amended Complaint as true for purposes of this motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

March 8, 2020, at around 5:00 a.m., several BOP officers, including the Individual Defendants, woke Plaintiff up by banging on his cell door and turning on the lights.  (*Id*. at 4).  One of the Individual Defendants said "[h]e's the one with child porn - they say three levels of encrypted child porn.  Let's get him."  (*Id*.).  The Individual Defendants then grabbed Plaintiff, pushed him against his mattress, twisted his arms behind his back, and yanked him out of bed.  (*Id*.).  They put sandals on his feet and forcefully dragged him from his cell while shouting incoherently at him.  (*Id*.).  When Plaintiff asked the Individual Defendants what was going on, he was shoved into the hallway.  (*Id*.).

While BOP officers searched Plaintiff's cell, the Individual Defendants escorted Plaintiff out of his cell and dragged him through various units of the MCC, forcing Plaintiff to walk backwards with his head facing the floor.  (*See id*.).  Two of the Individual Defendants held what Plaintiff believed to be paintball guns at his face.  (*Id*.).  At one point, Plaintiff fell to the ground bruising his ankles, and the Individual Defendants began to drag him.  (*Id*. at 5).  When Plaintiff stood up, he was knocked down again.  (*Id*.).  Plaintiff's vision began to blur and he believed he was suffering a concussion from the fall.  (*Id*.).

The Individual Defendants brought Plaintiff to the receiving and discharge unit of the MCC and forced Plaintiff into the x-ray machine at gunpoint.  (*Id*. at 5.1).  They ordered him to strip and examined his rectum.  (*Id*.).  Afterwards, the Individual Defendants returned Plaintiff's clothes to him and escorted him through Unit 10S to the recreation room.  (*Id*.).  In the recreation room, Plaintiff complained that he was cold but the Individual Defendants refused to move him.  (*Id*.).

When Plaintiff "protest[ed] that [he has] done nothing wrong and possesses the First Amendment right to free speech," the Individual Defendants shoved Plaintiff's face into the wall.

(*Id*.). Plaintiff cried out in pain and begged the Individual Defendants to stop but they pulled his handcuffed arms up behind his back causing him to dislocate his shoulder. (*Id*.). After 30 minutes in the cold, Plaintiff was returned to his cell without any clothes, bed sheets, or blankets. (*Id*.). His cell had been "ransacked"; the BOP officers emptied his legal papers on the floor, confiscated several of his items including commissary items he had purchased, and confiscated his medication. (*Id*.).

## II. PROCEDURAL HISTORY

Plaintiff filed the original complaint in this action on April 2, 2020, alleging a violation of his civil rights arising out of the March 8, 2020, search. (Dkt. No. 1). On June 29, 2020, this Court ordered the BOP to ascertain the identities of the Individual Defendants. (Dkt. No. 9). On October 28, 2020, counsel for the BOP identified the Individual Defendants as the BOP officers involved in escorting Plaintiff from his cell, to the receiving and discharging area, and back to his cell. (Dkt. No. 20). On March 29, 2020, Plaintiff filed the Amended Complaint alleging FTCA claims against the United States and *Bivens* claims for excessive force against the Individual Defendants and unknown BOP officers who have not yet been identified. (Dkt. No. 33). Magistrate Judge Gorenstein ordered the U.S. Marshal Service to serve the Individual Defendants as well as the United States. (*See* Dkt. Nos. 35–36). Thereafter, the Individual Defendants and the United States were served with the Amended Complaint. (*See* Dkt. Nos. 44–51).

On August 9, 2021, Judge Gorenstein ordered each of the defendants in this action to, by August 27, 2021, either "(1) file an Answer, (2) file a letter indicating that the defendant has been properly served and intends to file a motion to dismiss before Judge Gardephe (and seeking a specific and reasonable date for the filing of such a motion), or (3) file a letter indicating that

3

proper service has not been made and why this is so." (Dkt. No. 56). On August 27, 2021, the United States of America filed an answer (Dkt. No. 59), and the Individual Defendants confirmed that they were properly served and requested until September 24, 2021, to file a motion to dismiss the Amended Complaint (Dkt. No. 60).[2] Judge Gorenstein ordered the Individual Defendants to file their motion before Judge Gardephe on or before September 24, 2021. (Dkt. No. 61).

## LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true the well-pleaded factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). While "detailed factual allegations" are not required, Rule 8(a)(2) requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Simply offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s] devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)).

To withstand a motion to dismiss, a complaint must contain sufficient facts that state a plausible claim for relief. *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. But courts need not give "credence to plaintiff's conclusory allegations." *Cantor Fitzgerald v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002) (internal quotation

---

[2] Defendant Brian Thiroway confirmed that he was served on August 31, 2021. (Dkt. No. 66).

marks and citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

In a case brought by a *pro se* plaintiff, a court must "construe [ ] [the] [Complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s].'" *Martinez v. Aycock-West.*, 164 F. Supp. 3d 502, 508 (S.D.N.Y. 2016) (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)). But "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Id*. (quotation omitted) (citing *Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]*ro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them.")).

## ARGUMENT

### I. THE *ABBASI* DECISION SIGNIFICANTLY LIMITED THE AVAILABILITY OF A *BIVENS* REMEDY

The Supreme Court's 1971 *Bivens* decision recognized a judicially-created, constitutional cause of action for money damages, in the absence of a cause of action enacted by Congress. 403 U.S. at 396–97. In *Bivens*, the plaintiff alleged that federal agents entered his apartment without a warrant, used excessive force in arresting him in front of his wife and children, threatened to arrest his family, and proceeded to search the entire apartment, all without probable cause and, therefore, in violation of the Fourth Amendment. *Id*. at 389. The *Bivens* Court created a cause of action against the agents for damages resulting from their violation of the plaintiff's constitutional rights, reasoning that Congress had not foreclosed a damages remedy in

"explicit" terms and that no "special factors" suggested that the Judiciary should "hesitat[e]" in the face of congressional silence. *Id*.

Since *Bivens*, the Supreme Court has implied a *Bivens* remedy in only two other cases. In the first, *Davis v. Passman*, the plaintiff alleged that she was wrongfully fired by her employer, a United States Congressman, because she was a woman in violation of the Fifth Amendment. 442 U.S. 228, 230 (1979). In the second, *Carlson v. Green*, the plaintiff alleged that federal prison officials violated the Eighth Amendment by failing to provide timely, competent medical attention to her son, despite having been on notice of his medical conditions, resulting in his death. 446 U.S. 14, 16 n.1 (1980). The Supreme Court has not recognized a *Bivens* remedy in any new context since 1980, and it has declined to do so on several occasions. *See Zigler v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (citing eight instances from 1983 through 2012 where the Supreme Court declined to extend *Bivens* to a new context or new category of defendants).

In *Zigler v. Abbasi*, the Supreme Court observed that there had been a "notable change to the Court's approach to recognizing implied causes of action" following *Bivens*, noting the consistent "caution" expressed by the Court on the occasions it has taken up the issue. *Id*. at 1857. That caution has been driven by a number of considerations, chiefly, the separation-of-powers concerns raised when a court "determine[s] that it has the authority . . . to create and enforce a cause of action for damages against federal officials." *Id*. at 1856 (noting the "substantial costs" and "economic and governmental concerns," as well as Congress's responsibility in determining such liability). Reiterating these concerns, the *Abbasi* Court firmly instructed that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id*. at 1856–57 (quoting *Iqbal*, 556 U.S. at 675).

6

The Court set forth a two-part inquiry that courts must conduct to determine whether a *Bivens* remedy may be available in any given case. First, the court must determine whether the "case presents a new *Bivens* context," meaning that it "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." The Court narrowly defined the previous cases as: "[1] a claim against FBI agents for handcuffing a man in his own home without a warrant [in violation of the Fourth Amendment] [*Bivens*]; [2] a claim against a Congressman for firing his female secretary [in violation of the Fifth Amendment] [*Davis v. Passman*]; and [3] a claim against prison officials for failure to treat an inmate's asthma [in violation of the Eighth Amendment] [*Carlson v. Green*]." 137 S. Ct. at 1859–60. The Court explained:

> [A] case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1859–60. The Court added that "even a modest extension" of an existing *Bivens* remedy "is still an extension" that can present a new context for *Bivens* purposes. *Id.* at 1864.

Second, if a case presents a new *Bivens* context, then the court must evaluate whether "there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* at 1857 (quoting *Carlson*, 446 U.S. at 19).[3] In evaluating whether special

---

[3] The Second Circuit has explained that "hesitation" "is at the opposite end of the continuum from the unflagging duty to exercise jurisdiction. Hesitation is a pause, not a full stop, or an abstention; and to counsel is not to require. 'Hesitation' is 'counseled' whenever thoughtful discretion would pause even to consider." *Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009) (en banc).

factors counsel hesitation, the court "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857–58.  The *Abbasi* Court observed that "[i]t is not necessarily a judicial function to establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation, with all of its burdens on some and benefits to others." *Id*. at 1858. Among other things, the Court instructed:

> [I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action.  For if Congress has created "any alternative, existing process for protecting the injured party's interest" that itself may "amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages."

*Id*. at 1858 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)) (internal brackets omitted); *see also Arar*, 585 F3.d at 572 (a central consideration in a court's determination of whether a new *Bivens* remedy should be implied is "whether there is an alternative remedial scheme available to the plaintiff" (citing *Wilkie*, 551 U.S. at 550)).  Only if this searching analysis reveals no special factors counseling hesitation may a court create a judicial remedy "without express congressional authorization."  *Abbasi*, 137 S. Ct. at 1858.

## II.     THE COURT SHOULD NOT CREATE A NEW *BIVENS* REMEDY IN THIS CASE BECAUSE IT PRESENTS A NEW *BIVENS* CONTEXT AND SPECIAL FACTORS COUNSEL HESITATION

Applying *Abbasi*'s two-party inquiry, Plaintiff has not stated a *Bivens* claim against the Individual Defendants because the Supreme Court has not recognized a *Bivens* claim in any context similar to the allegations here, and special factors counsel hesitation against implying such a new *Bivens* remedy.   Plaintiff's allegation that his constitutional rights were violated when the Individual Defendants allegedly used excessive force on him, in retaliation for his alleged possession of child pornography, is meaningfully different from previous *Bivens* cases

8

decided by the Supreme Court, both in terms of the constitutional right asserted and the factual circumstances at issue. The special factors identified by the *Abbasi* court — particularly the existence of an alternative remedial structure — counsel strongly against recognizing a *Bivens* remedy in cases alleging excessive force or retaliation by federal correctional officers against a pretrial inmate.

> A. **Plaintiff's Claim Presents a Meaningfully Different Context from the Three Prior *Bivens* Claims Recognized by the Supreme Court**

Plaintiff's claims of excessive force and retaliation by the Individual Defendants at MCC present a new *Bivens* context. The circumstances Plaintiff alleges are meaningfully different from the three cases in which the Supreme Court previously recognized a *Bivens* claim, in terms of both the factual background and the relevant legal considerations.

First, Plaintiff's allegations that: (i) he was subjected to excessive force by federal correctional officers while incarcerated; and (ii) the excessive force and search was in retaliation for the child pornography charges pending against Plaintiff, present, by any measure, a materially different factual scenario. *Bivens* itself dealt with allegations of a warrantless entry into the home of an individual, who was handcuffed and arrested, his home searched, and his family threatened with arrest, all without probable cause. 403 U.S. at 389. *Carlson* involved allegations that prison officials refused to treat an inmate's serious medical condition, leading to his death. 446 U.S. at 14. *Davis* involved allegations of wrongful termination of a Congressman's secretary based on her gender. 442 U.S. at 231. All are meaningfully different from the facts alleged here. As in *Abbasi*, Plaintiff's "claim[] bear[s] little resemblance to the three *Bivens* claims the [Supreme] Court has approved in the past." 137 S. Ct. at 1860. Rather, the constitutional violation alleged by Plaintiff bears closer resemblance to the claims alleged by respondents in *Abbasi*: that three executive officers in the Department of Justice violated the

9

inmates' due process and equal protection rights by holding them in restrictive conditions of confinement, and that Metropolitan Detention Center ("MDC") warden and associate warden violated the Fourth and Fifth Amendments by subjecting the inmates to frequent strip searches. *Id*. at 1858–60.

Second, this action involves different constitutional rights. Although the Amended Complaint alleges violations of the First, Fourth, Fifth, and Eighth Amendments (*see* Am. Compl. at 5), the factual allegations, construed liberally, at most implicate the First and Fifth Amendments. (*See id*. at 4–5.2). As an initial matter, to the extent Plaintiff's purported Fourth Amendment claim is premised on the search of his person or cell, such claim fails to allege a constitutional violation. *See Florence v. Bd. of Chosen Freeholders of Cty. Of Burlington*, 566 U.S. 318, 339 (2012) (strip searches of inmates upon admission to correctional facility do not violate the Fourth Amendment); *Hudson v. Palmer*, 468 U.S. 517, 530 (1984) (searches of inmates' cells do not violate the Fourth Amendment since prisoners have no reasonable expectation of privacy in their cells); *Bell v. Wolfish,* 441 U.S. 520, 558 (1979) (strip searches conducted after contact visits did not violate pretrial detainees' Fourth Amendment rights); *see also Samson v. California*, 547 U.S. 843, 857 (2006) (suspicionless search of parolee did not violate Fourth Amendment). Moreover, because Plaintiff was a pretrial detainee at the time of the alleged assault, the Fifth Amendment, rather than the Eighth Amendment, is the relevant constitutional provision for his excessive force claim. *See Graham v. Connor*, 490 U.S. 386, 392 n.6, 395 n.10 (1989) ("[T]he Eighth Amendment's protections d[o] not attach until after conviction and sentence … however, [] the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment."). Accordingly, Plaintiff cannot assert a Fourth or Eight Amendment claim.

Plaintiff's purported First and Fifth Amendment claims also fail. None of the Supreme Court's cases recognizing a *Bivens* remedy implicated the Fifth Amendment right to be free from the deliberate use of excessive force nor the right to be free from retaliation for exercising First Amendment freedoms. *Bivens* itself involved a Fourth Amendment search-and-seizure claim, and *Carlson* involved a failure to provide medical treatment required by the Eighth Amendment. Although *Davis* involved the Fifth Amendment, Plaintiff's excessive force claim is meaningfully different from the gender discrimination claim in the employment context that was presented in *Davis*. *See Morgan v. Shivers*, No. 14 Civ. 7921 (GHW), 2018 WL 618451, at *5 (S.D.N.Y. Jan. 29, 2018) ("[A]lthough *Davis* concerned the Fifth Amendment, [plaintiff's] Fifth Amendment excessive force and sexual assault claims are meaningfully different from gender discrimination claim raised in *Davis*."). That is sufficient to present a new context under *Abbasi*, which recognized that even if a case presents "significant parallels to one of the [Supreme] Court's previous *Bivens* cases, . . . a modest extension is still an extension." 137 S. Ct. at 1864. And importantly, the Supreme Court has twice declined to recognize a *Bivens* cause of action for retaliation. *See Wilkie*, 551 U.S. at 549; *Bush v. Lucas*, 462 U.S. 367 (1983).

Post-*Abbasi*, district courts have found "new contexts" (and declined to extend *Bivens* remedies) where the alleged constitutional violations consisted of: (1) corrections officers using excessive force when placing an inmate into a vehicle to transport him from the hospital to MCC, *see Ramirez v. Tatum*, No. 17 Civ. 7801 (LGS), 2018 WL 6655600, at *5 (S.D.N.Y. Dec. 19, 2018); (2) a Deputy Marshal pushing an inmate's wheelchair into a wall, resulting in pain and injuries, *see Abdoulaye v. Cimaglia,* No. 15 Civ. 4921 (PKC), 2018 WL 1890488, at *6 (S.D.N.Y. Mar. 30, 2018); (3) BOP officials' search of an inmate's body cavities and forcible removal of contraband from his anal cavity, *see Morgan,* 2018 WL 618451, at *5; (4) a BOP

11

official's cover-up of an inmate's death while in custody, *see Morrison v. United States*, No. 17 Civ. 6779 (WHP), 2019 WL 5295119, at *3 (S.D.N.Y. Oct. 18, 2019); and (5) the MDC warden's deliberate indifference to guards' abuse of inmates, *see Turkmen v. Ashcroft*, No. 02 Civ. 2307 (DLI) (SMG), 2018 WL 4026734, at *2 (E.D.N.Y. Aug. 13, 2018), *report and recommendation adopted by* 2021 WL 4099495 (E.D.N.Y. Sep. 9, 2021).[4]

Because Plaintiff's excessive force and retaliation claims implicate different constitutional rights, as well as materially different facts, from the three prior *Bivens* claims recognized by the Supreme Court, they implicate a new context for purposes of determining whether to imply a damages remedy, and the Court must proceed to consider special factors. 137 S. Ct. at 1860, 1865.

### B. Special Factors Counsel Against Creating a *Bivens* Cause of Action Here

The second step of the *Abbasi* analysis, which requires a court to consider whether special factors counsel hesitation in the absence of affirmative action by Congress, weigh against extending a *Bivens* remedy to Plaintiff's claim here. In particular, where Congress has created "any alternative, existing process for protecting the injured party's interest," that itself may "amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Abbasi*, 137 S. Ct. at 1858 (internal quotation marks omitted). As relevant here, Congress provided an alternative remedy under the FTCA, which was amended by Congress in 1974, three years after the *Bivens* decision, to provide for monetary damages for certain types of intentional torts, including claims arising out of "assault" and "battery" with

---

[4] Counsel for the Individual Defendants were unable to locate a single decision, post-*Abbasi*, in which a district court recognized a *Bivens* remedy for an excessive force or retaliation claim brought by an inmate.

12

"regard to acts or omissions of investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h); Act of Mar. 16, 1974, Pub. L. 93–253, § 2, 88 Stat. 50; *see also Carlson*, 446 U.S. at 20 (concluding that BOP officials are law enforcement officials for purposes of the investigative or law enforcement officer carveout to the intentional tort exception in 28 U.S.C. § 2680(h)).

Although the Supreme Court described the FTCA and *Bivens* as "parallel" and "complementary" remedies over four decades ago in *Carlson*, that language has been narrowly cabined by the *Abbasi* decision, which emphasized the "changes to the Court's general approach" to implied constitutional remedies in the decades following *Carlson*. *Abbasi*, 137 S. Ct. at 1855–57.  Indeed, the *Abbasi* Court expressly stated that the outcome in the three Supreme Court cases recognizing a *Bivens* damages remedy — including *Carlson* — "might have been different if they were decided today." *Id*. at 1856.  As the *Abbasi* Court observed, it is clear from the decades of jurisprudence since the *Bivens* decision that "when alternative methods of relief are available, a *Bivens* remedy usually is not." *Id*. at 1863.  Moreover, those alternative methods "need not be perfectly congruent" to preclude a *Bivens* remedy.  *Minneci v. Pollard*, 565 U.S. 112, 129 (2012) ("State-law remedies and a potential *Bivens* remedy need not be perfectly congruent.").  Here, because the FTCA provides a remedy for the type of conduct alleged by Plaintiff, "this is not a case like *Bivens* or *Davis* in which it is damages or nothing." *Abbasi*, 137 S. Ct. at 1862 (finding this fact "of central importance" in the special factors analysis) (internal quotation marks omitted).

The *Abbasi* Court also noted that fifteen years after *Carlson* was decided, Congress enacted the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e, "which made comprehensive changes to the way prisoner abuse claims must be brought in federal court." *Id*.

13

at 1865. The Court found it "clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs," yet "d[id] not provide for a standalone damages remedy against federal jailers." *Id*. "It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Id*. This, too, counsels hesitation in creating a new *Bivens* remedy in this case. *See Morgan*, 2018 WL 618451, at *6 ("Congress has legislated in the arena of prisoner rights, suggesting that the courts should not extend a damages remedy in this sphere").

    Ultimately, as the Supreme Court noted, "[w]hen a party seeks to assert an implied cause of action under the Constitution itself, . . . [t]he question is 'who should decide' whether to provide for a damages remedy, Congress or the courts? The answer most often will be Congress." *Abbasi*, 137 S. Ct. at 1857 (citing *Bush*, 462 U.S. at 380). Through its post-*Bivens* amendment of the FTCA, Congress decided to provide a damages remedy under the FTCA for claims of assault and battery by federal law enforcement officials, which covers the type of conduct alleged by Plaintiff here. Indeed, the fact that these allegations arise in the prison context should give the Court additional hesitation before implying a *Bivens* remedy, as "the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial." *See Bell*, 441 U.S. at 548; *see also Morgan*, 2018 WL 618451, at *6 ("Prison administrators … should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). That the FTCA provides an alternative remedy, of which Plaintiff has availed himself, in federal court and for monetary damages, and which was specifically created by Congress and not the Judiciary,

counsels strongly against implying a novel *Bivens* remedy for the same type of conduct. *Abbasi*, 137 S. Ct. at 1858 (explaining that Congress is better positioned to make "an assessment of [an implied remedy's] impact on governmental operations systemwide," "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself," and "the proper formulation and implementation of public policies" through the legal system); *see also Abdoulaye*, 2018 WL 1890488, at *7 ("the existence of the FTCA as a potential remedy counsels hesitation in extending a *Bivens* remedy to [plaintiff's] claims). Accordingly, several special factors weigh against implying a *Bivens* remedy for Plaintiff's claims.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's claims against the Individual Defendants.

Date: New York, New York
September 24, 2021

                                            Respectfully submitted,

                                            AUDREY STRAUSS
                                            United States Attorney
                                            Southern District of New York

By:   */s/ Tara Schwartz*
        ELLEN BLAIN
        TARA SCHWARTZ
        Assistant United States Attorneys
        86 Chambers Street, 3rd Floor
        New York, New York 10007
        Telephone: (212) 637-2793/2633
        Email: ellen.blain@usdoj.gov
                tara.schwartz@usdoj.gov