UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY PRO SE OFFICE
2021 DEC 21   AM 10: 24

JOSHUA ADAM SCHULTE,

              *Plaintiff,*

    -v-

UNITED STATES OF AMERICA, TIMOTHY
VALENTINE, JOHN BARRETT, BRIAN
THIROWAY, MICHAEL SINKVICH, MARK
BURNS, MICHAEL GETCHEY, JAMES
WELCH, and UNKNOWN BOP OFFICERS
THAT HAVE NOT YET BEEN IDENTIFIED,

              *Defendants.*

20 Civ. 2795 (PGG)(GWG)

**MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

Joshua Adam Schulte
Slave #79471054
Metropolitan Detention Center (MDC)
P.O. Box 329002
Brooklyn, NY 11232

## TABLE OF CONTENTS

I.    TABLE OF AUTHORITIES ............................................................... ii

II.   PRELIMINARY STATEMENT ........................................................ 1

III.  BACKGROUND: AMENDED COMPLAINT ..................................... 1

IV.   MOTION TO DISMISS ................................................................... 3

   A.   Evaluating *Bivens* claims ...................................................... 4

   B.   Individual Defendants liable under the Fourth Amendment ........ 5

   C.   Individual Defendants liable under Fifth Amendment ............... 6

     1.   Deliberate Indifference ....................................................... 7

     2.   Excessive Force ................................................................. 9

   D.   Even if the Court determines these claims constitute a new *Bivens* context, it should extend the *Bivens* remedy ............................................... 10

     1.   *Bivens* context necessary to deter individual federal officers from committing constitutional violations .................................. 10

     2.   Special factors do not command hesitation in recognizing a damages remedy ................................................................... 13

V.    MOTION TO SUSPEND DISCOVERY ......................................... 15

VI.   CONCLUSION ........................................................................... 16

# I.   TABLE OF AUTHORITIES

**Cases**

*Agostini v. Felton*,
   521 U.S. 203 (1997)..................................................................................7

*Arar v. Ashcroft*,
   585 F.3d 559 (2d Cir. 2009),
   *cert. denied*, 560 U.S. 978 (2010)..........................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................3, 9

*Bell v. Wolfish*,
   441 U.S. 520 (1979)............................................................................6, 12

*Bivens v. Six Unknown Fed. Narcotics Agents*,
   403 U.S. 388 (1971)..................................................................... passim

*Bristrian v. Levi*,
   912 F.3d 79 (3rd Cir. 2018)..................................................................8, 13

*Bueno Diaz v. Mercurio*,
   442 F. Supp. 3d 701 (S.D.N.Y. 2020)...................................................9, 14

*Bush v. Lucas*,
   462 U.S. 367 (1983)...............................................................................14

*Carlson v. Green*,
   446 U.S. 14 (1980)...................................................................... passim

*Castro v. United States*,
   34 F.3d 106 (2d Cir. 1994)......................................................................5

*Corr. Servs. Corp. v. Malesko*,
   534 U.S. 61 (2001)..................................................................... passim

*Cuoco v. Moritsugu*,
   222 F.3d 99 (2d Cir. 2000)......................................................................7

*Darnell v. Pineiro,*
    849 F.3d 17 (2d Cir. 2017) ............................................................................ 8

*Davis v. Passman,*
    442 U.S. 228 (1979) ....................................................................................... 3

*DeShaney v. Winnebago County Dep't of Soc. Servs.,*
    489 U.S. 189 (1989) ....................................................................................... 8

*Dodds v. Richardson,*
    614 F.3d 1185 (10th Cir. 2010) ..................................................................... 7

*Estelle v. Gamble,*
    429 U.S. 97 (1976) ......................................................................................... 7

*Farmer v. Brennan,*
    511 U.S. 825 (1994) ................................................................................... 6, 7

*Groh v. Ramirez,*
    540 U.S. 551 (2004) ....................................................................................... 5

*Hill v. Curcione,*
    657 F.3d 116 (2d Cir. 2011) .......................................................................... 7

*Iqbal v. Hasty,*
    490 F.3d 143 (2d Cir. 2007) .......................................................................... 9

*Jacobs v. Alam,*
    915 F.3d 1028 (6th Cir. 2019) ....................................................................... 9

*Kost v. Kozakiewicz,*
    1 F.3d 176 (3d Cir. 1993) .............................................................................. 6

*Laurent v. Borecky,*
    No. 17 Civ. 3300 (PKC)(LB),
    2018 WL 2973386 (E.D.N.Y. June 12, 2018) ............................................... 8

*Lehal v. Central Falls Detention Facility Corp.,*
    No. 13 Civ. 3923,
    2019 WL 1447261 (S.D.N.Y. Mar. 15, 2019) .............................................. 10

*McLeod v. Jewish Guild for the Blind*,
   864 F.3d 154 (2d Cir. 2017) ...................................................................3

*Montero v. City of Yonkers, New York*,
   890 F.3d 386 (2d Cir. 2018) ...................................................................3

*Powell v. United States*,
   No. 19 Civ. 11351,
   2020 WL 5126392 (S.D.N.Y. Aug. 31, 2020)....................................14

*Procunier v. Martinez*,
   416 U.S. 396 (1974)..............................................................................12

*Roman v. Wolf*,
   829 Fed. Appx. 165 (9th Cir. 2020)......................................................8

*Sanchez v. Pereira-Castillo*,
   590 F.3d 31 (1st Cir. 2009)....................................................................7

*Sandoval v. City of San Diego*,
   985 F.3d 657 (9th Cir. 2021) .................................................................6

*Sandra T.E. v. Grindle*,
   599 F.3d 583 (7th Cir. 2010) .................................................................7

*Sisk v. MCC*,
   No. 20 Civ. 10293 (LTS),
   2021 U.S. Dist LEXIS 22378 (S.D.N.Y. February 3, 2021) .................8

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ...............................................................7

*Tellier v. Fields*,
   280 F.3d 69 (2d Cir. 2000) ....................................................................9

*Thomas v. Ashcroft*,
   470 F.3d 491 (2d Cir. 2006) ..............................................................3, 9

*Turner v. Safley*,
   482 U.S. 78 (1987)................................................................................12

*Walker v. Schult,*
    717 F.3d 119 (2d Cir. 2013) ..................................................................7

*Wolff v. McDonnell,*
    418 U.S. 539 (1974).............................................................................12

*Ziglar v. Abbasi,*
    137 S. Ct. 1843 (2017)................................................................. passim


**Statutes**

Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671 *et seq.* ...........13, 14, 15


**Rules**

Fed. R. Civ. P. 12(b)(6)...............................................................................1

Fed. R. Civ. P. 26(c) ................................................................................15


**Constitutional Provisions**

U.S. Const. amend. IV .................................................................. passim

U.S. Const. amend. V.................................................................... passim

U.S. Const. amend. VIII ..........................................................3, 6, 8, 12

## II.    PRELIMINARY STATEMENT

Individual Bureau of Prisons (BOP) defendants moved to dismiss the *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), claims against them pursuant to Fed. R. Civ. P. 12(b)(6) on September 27, 2021 ("Opening Mem."). The defendants argued that the "[p]laintiff fails to state a *Bivens* claim because the Supreme Court has not recognized a *Bivens* remedy against the Individual Defendants under the circumstances alleged here," Opening Mem. at 1. However, the Individual Defendants' unreasonable searches, deliberate indifference, and excessive force are all cognizable *Bivens* claims. The defendants' motion is wholly without merit, and should be categorically denied.

## III.    BACKGROUND: AMENDED COMPLAINT

On the morning of March 8, 2020, at around 5:00 a.m., several BOP officers, including the Individual Defendants, woke Plaintiff by banging on his cage door and turning on the lights. One of the Individual Defendants said "[h]e's the one with child porn – they say three levels of encrypted child porn. Let's get him." The Individual Defendants then rushed Plaintiff, pushed him against his mattress, twisted his arms behind his back, and yanked him out of bed. They put sandals on his feet and forcefully dragged him from his cage while shouting incoherently at him. When plaintiff asked the Individual Defendants what was going on, he was shoved into the hallway.

While BOP officers ransacked Plaintiff's cage, the Individual Defendants escorted Plaintiff out of his cage and dragged him through various units of the MCC, forcing Plaintiff to walk backwards as one of the Defendants applied pressure at his neck to force him to bow down and face the floor. Two of the Individual Defendants held paintball guns to his face. The Individual Defendants

1

dragging Plaintiff backwards used excessive force as they yanked on his handcuffs, cutting his wrists. Despite multiple cries that the Individual Defendants were hurting him, they not only did not stop, but seemed excited and encouraged by Plaintiff's cries of pain, yanking him so hard they pulled him to the ground, bruising his ankles, and dragging him. When Plaintiff finally regained his feet, he was knocked down again, extremely hard, causing a concussion.

The Individual Defendants brought Plaintiff to MCC's R&D and forced Plaintiff to undergo an x-ray at the point of a gun. They ordered him to strip and examined his rectum. Afterwards, the Individual Defendants returned Plaintiff's clothes to him and escorted him back to Unit 10S. Since the Individual Defendants searching Plaintiff's cage had not yet finished, the Individual Defendants escorting Plaintiff moved him into the recreation room, which is completely open to the outside cold. As Plaintiff was only wearing a T-shirt and boxers, the winter cold froze him; despite notifying the officers of his predicament and the extreme cold, they did not move him. In fact, the lead BOP officer told Plaintiff to "shut the fuck up" and ordered the Individual Defendants to "shove his mouth up against the wall to shut him up."

When Plaintiff protested that he did nothing wrong, the Individual Defendants then shoved his face into the wall so he could not speak. Plaintiff cried out in pain and begged the Individual Defendants to stop, but they pulled his handcuffed arms up behind his back, dislocating his shoulder. After 30 minutes of shivering in the extreme cold, Plaintiff was returned to his cage without any clothes, bed sheets, or blankets. His cage had been completely ransacked, his legal papers emptied all over the floor, and his commissary and other items strewn about.

## IV.   MOTION TO DISMISS

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *Montero v. City of Yonkers, New York*, 890 F.3d 386, 391 (2d Cir. 2018). To withstand a motion to dismiss, a complaint must contain sufficient facts that state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Courts must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (internal quotation marks omitted).

In *Bivens*, the Supreme Court recognized an implied cause of action for money damages to compensate plaintiffs for certain constitutional violations at the hands of federal officers in their individual capacities. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1851-52 (2017); see also *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001). The Supreme Court confirmed the availability of this remedy in three narrow circumstances: (1) unreasonable searches and seizures in violation of the Fourth Amendment, *Bivens*, 403 U.S. at 397, (2) gender discrimination in violation of the Fifth Amendment's Due Process Clause, *Davis v. Passman*, 442 U.S. 228, 248-49 (1979), and (3) inadequate medical treatment in a prison in violation of the Eighth Amendment's Cruel and Unusual Punishments Clause, *Carlson v. Green*, 446 U.S. 14, 19 (1980). "Because the doctrine of *respondeat superior* does not apply in *Bivens* actions, a plaintiff must allege that the individual defendant was personally involved in the constitutional violation." *Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006).

3

A.    **Evaluating *Bivens* claims**

In *Abbasi*, the Supreme Court clarified the two-step framework for determining whether a *Bivens* remedy may properly be implied. First, a court must decide whether a plaintiff seeks damages in a new *Bivens* context. *Abbasi*, 137 S. Ct. at 1859-60. To do so, the court must evaluate whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Id.* at 1859. Several factors **may** be relevant to the inquiry, including: "the rank of the officers involved; the constitutional right at issue; the generality of specificity of the official action the extent of judicial guidance as to how an officer should respond to the problem confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Id.* at 1859-60. Although "the new-context inquiry is easily satisfied," the Supreme Court has recognized that "[s]ome differences, of course, will be so trivial that they will not suffice to create a new *Bivens* context." *Id.* at 1865.

If the case does not present a new *Bivens* context, then such relief is not precluded, and the court may evaluate the claim for damages on the merits. If, however, the court determines that the context is new, then it must proceed to analyze whether there are "special factors counselling hesitation in the absence or affirmation action by Congress." *Id.* at 1857. The Court explained that the "special factors" inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed. Thus, to be a 'special factor counseling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative." *Id.* at 1857-58.

4

### B.   Individual Defendants liable under the Fourth Amendment

The Individual Defendants are liable under *Bivens* for violation of the Fourth Amendment, confirmed remedy 1, *ibid*. The Individual Defendants had no right to compel Plaintiff to undergo an extremely invasive x-ray and body cavity search at 5:00 a.m. on Sunday morning—nor to search his torture cage. While the Individual Defendants claim that these allegations "fail to allege a constitutional violation," Opening Mem. at 10, the cited caselaw is inapposite as all reference legitimate governmental objectives to the search: strip searches of inmates upon admission to correctional facility; strip search conducted after contact visits; suspicionless search of parolee. None, however, deal with pretrial detainees, who are afforded more rights than convicted prisoners, nor do they deal with unreasonable, forced invasive searches for no legitimate governmental objective other than to harass, humiliate, and harm the Plaintiff. Indeed, the right violated certainly falls within a recognized *Bivens* context: the Fourth Amendment is at the core of the *Bivens* jurisprudence, as *Bivens* itself concerned a Fourth Amendment claim. See *Groh v. Ramirez*, 540 U.S. 551, 555 (2004) (recognizing the availability of a *Bivens* remedy for a Fourth Amendment claim of an unreasonable search, as a result of a facially invalid warrant); *Castro v. United States*, 34 F.3d 106, 107 (2d Cir. 1994).

Moreover, the Fourth Amendment challenges here are significantly different than those rejected by the *Abbasi* decision; there, the Supreme Court determined the searches and other prison conditions were effectively "detention policy claims" substantially different from the traditional *Bivens* jurisprudence, and rejected the *Bivens* extension. Here, the Individual Defendants' unreasonable searches were not "detention policy," but instead, align with the traditional *Bivens* remedy and Second Circuit precedent. There can be no question that forcing pretrial detainees to undergo intrusive medical exams and searches in the middle of the night,

5

without any probable cause or legitimate governmental objective, are unreasonable in violation of the Fourth Amendment. Accordingly, the Court should find the Individual Defendants liable under the original *Bivens* context, and the motion to dismiss should be denied.

### C.    Individual Defendants liable under Fifth Amendment

The Individual Defendants are liable under *Bivens* and *Carlson* for violation of the Fifth/Eighth Amendment, confirmed traditional remedy 3, *ibid*. The Individual Defendants focus their argument on the fact that the Plaintiff was a pretrial detainee at the time of the allegations, absurdly claiming that convicted, sentenced prisoners somehow have more rights than pretrial detainees. The government's claim is preposterous. It has long been recognized that pretrial detainees "retain at least those constitutional rights that we have held are enjoyed by convicted prisoners." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); see also *Sandoval v. City of San Diego*, 985 F.3d 657 (9th Cir. 2021). "Pretrial detainees... are entitled to at least as much protection as convicted prisoners, so the protections of the Eighth Amendment would seem to establish a floor of sorts." *Kost v. Kozakiewicz*, 1 F.3d 176, 188 n.10 (3d Cir. 1993).

Moreover, the two Fifth Amendment claims stated herein, deliberate indifference and excessive force, were identified by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825, 832-49 (1994). Although the *Farmer* Court did not explicitly state that it was recognizing a *Bivens* claim, it not only vacated the grant of summary judgment in favor of the prison officials but also discussed at length "deliberate indifference" as the legal standard to assess such a *Bivens* claim. Furthermore, in *Malesko*, in refusing to extend a *Bivens* remedy to claims against private corporations housing federal detainees, the Supreme Court observed in dicta that, while no claim was available against the *private corporation*, a federal

6

prisoner would have a remedy against *federal officials* for constitutional claims. 534 U.S. at 72. "If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity." *Id. Abbasi* does not contradict these findings. It is true that *Abbasi* identified three *Bivens* contexts and did not address, or otherwise cite to, *Farmer*. 137 S. Ct. at 1854-55; nor did it reference the *Malesko* decision. But this Court must decline to "conclude [that the Supreme Court's] more recent cases have, by implication, overruled an earlier precedent." *Agostini v. Felton*, 521 U.S. 203, 237 (1997).

Accordingly, this Court is bound by the Supreme Court's earlier decisions just as it is to *Abbasi*. This Court is compelled to the conclusion that, although the Plaintiff's claims derive from a different Amendment, it is not "different in a meaningful way" from the claim at issue in either *Carlson* or *Farmer. Abbasi*, 137 S. Ct. at 1859.

### 1.    Deliberate Indifference

The Fifth Amendment protects federal pretrial detainees from deliberate indifference to their serious medical needs. See *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); See also *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013); *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) (establishing that claims by federal pretrial detainees under the Fifth Amendment are analyzed in the same manner as claims by state pretrial detainees under the Fourteenth Amendment); *Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011); *Dodds v. Richardson*, 614 F.3d 1185, 1204-05 (10th Cir. 2010); *Sandra T.E. v. Grindle*, 599 F.3d 583, 590-91 (7th Cir. 2010); *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 39 (1st Cir. 2009).

Post-*Abbasi*, the circuits and districts in this Circuit have all accepted deliberate indifference as a recognized *Bivens* context. "The Fifth Amendment requires the government provide conditions of reasonable health and safety to people in its custody." *Roman v. Wolf*, 829 Fed. Appx. 165 (9th Cir. 2020) (referencing *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989)); *Bristrian v. Levi*, 912 F.3d 79 (3rd Cir. 2018) (Pretrial detainee's Fifth Amendment claims of "deliberate indifference" cognizable under established *Carlson Bivens* context); *Darnell v. Pineiro*, 849 F.3d 17, 21 n.3 (2d Cir. 2017) (analyzing unconstitutional conditions of confinement claims under the Eighth and Fourteenth Amendments). "Federal pretrial detainees may bring a Fifth Amendment claim for failure to provide medical treatment as a *Bivens* action because such a claim bears a strong resemblance to the claim in *Carlson*." *Sisk v. MCC*, 20-CV-10293 (LTS), 2021 U.S. Dist LEXIS 22378, (S.D.N.Y. February 3, 2021); *Laurent v. Borecky*, No. 17-CV-3300 (PKC)(LB), 2018 WL 2973386, at *5 (E.D.N.Y. June 12, 2018).

Despite Plaintiff's vocal remonstrations to the Individual Defendants that they were hurting his wrists by yanking on his handcuffs, the Individual Defendants not only ignored his anxious cries, but increased the pressure to the point of violently pulling him to the ground and banging his head against the ground, causing a concussion. And as if that wasn't bad enough, they then began to drag him. Despite these injuries and cries of pain, the Individual Defendants did not seek medical assistance nor assist the Plaintiff in any way. This is the very definition of deliberate indifference and consistent with the *Carlson* decision.

Next, Plaintiff informed the Individual Defendants that he was freezing cold in the open-window recreation room. In response, the Individual Defendants not only ignored his courteous requests to be moved out of the cold, but they retaliated

against him, bashing his head against the wall and then dislocating his shoulder. Once again, the Individual Defendants did not render medical assistance or end Plaintiff's ongoing suffering from the freezing outside air. Accordingly, the Court should find the Individual Defendants liable under *Bivens*, and the motion to dismiss should be denied.

### 2.   Excessive Force

The Second Circuit has also recognized the availability of *Bivens* relief for federal prisoners housed in federal facilities bringing claims against individual federal officers. In *Thomas v. Ashcroft*, 470 F.3d at 497, the Second Circuit reversed the district court's dismissal of the prisoner plaintiff's *Bivens* claim for violation of his due process rights against supervisory prison officials. See also *Tellier v. Fields*, 280 F.3d 69, 80-83 (2d Cir. 2000) (recognizing a *Bivens* remedy for a claim of deprivation of procedural due process brought by a federal prisoner against federal prison officials). Furthermore, in *Iqbal v. Hasty*, 490 F.3d 143, 159 (2d Cir. 2007), *rev'd on other grounds sub nom*, *Ashcroft* v. *Iqbal*, 556 U.S. 662, where the Second Circuit considered claims similar to those at issue in this case, they "did not so much as hint either that a *Bivens* remedy was unavailable or that its availability would constitute an unwarranted extension of the *Bivens* doctrine." *Arar v. Ashcroft*, 585 F.3d 559, 597 (2d Cir. 2009) (*en banc*), *cert. denied*, 560 U.S. 978 (2010) (Stask, J., dissenting) (discussing *Hasty*, 490 F.3d at 177-78).

Post-*Abbasi*, multiple courts have concluded that *Bivens* recognizes a cause of action for excessive force and related claims under some circumstances. See, e.g., *Jacobs v. Alam*, 915 F.3d 1028, 1038 (6th Cir. 2019) (holding plaintiff had cause of action under *Bivens* itself to bring "run-of-the-mill challenges" to "standard law enforcement operations," including excessive force claims); *Bueno Diaz v. Mercurio*, 442 F. Supp. 3d 701, 708-09 (S.D.N.Y. 2020) (holding plaintiff

9

had cause of action under *Bivens* itself to bring excessive force claim); *Lehal v. Central Falls Detention Facility Corp.*, No. 13-CV-3923, 2019 WL 1447261, at *12 (S.D.N.Y. Mar. 15, 2019) (same). Accordingly, the Court should find the Individual Defendants liable under *Bivens*, and the motion to dismiss should be denied

**D.      Even if the Court determines these claims constitute a new *Bivens* context, it should extend the *Bivens* remedy**

The Court should conclude that the case does not present a new *Bivens* context. In the alternative, even if this case presented a new *Bivens* context, special factors would not command hesitation in recognizing a damages remedy, and in fact, the necessity to deter individual federal officers from committing constitutional violations—the very core of *Bivens*—strongly urge the Court to recognize and "extend" *Bivens* to this context.

**1.      *Bivens* context necessary to deter individual federal officers from committing constitutional violations**

"The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." *Corr. Servs. Corp. v. Malesko*, 534 U.S. at 66. The entire point of *Bivens* was to safeguard the Constitution by punishing federal officers for Constitutional violations. If not for *Bivens*, then the Constitution and entire Bill of Rights exist in name only—what stops the FBI from beating American citizens in the streets or robbing them without a warrant? Absolutely nothing. Thus, what good is a Bill of Rights and a Constitution if there is no punishment for those who rape it? Therefore, it is incumbent upon the judiciary to create private actions in order to uphold its duty to the Constitution—it is not a separation of powers violation; the Constitution literally charges the judiciary with upholding the Constitution itself and the laws of the land. While it

would certainly be ideal for Congress to pass laws codifying violations, punishments, and private actions, Congress' failure to do so compels the judiciary to create its own solutions to uphold and protect the Constitution as it is required.

The Supreme Court recognized the necessity of *Bivens* and deterrence in *Abbasi*. "There is a persisting concern, of course, that absent a *Bivens* remedy there will be insufficient deterrence to prevent officers from violating the Constitution." *Abbasi*, at 1863. However, the *Abbasi* circumstances were radically different from those here, implicating national security and executive branch policy. "In circumstances like those presented here, however, the stakes on both sides of the argument are far higher than in past cases the Court has considered. If *Bivens* liability were to be imposed, high officers who face personal liability for damages might refrain from taking urgent and lawful action in a time of crisis. And, as already noted, the costs and difficulties of later litigation might intrude upon and interfere with the proper exercise of their office." *Id.* The Court ultimately determined that a balance was necessary. "On the other side of the balance, the very fact that some exercise actions have the sweeping potential to affect the liberty of so many is a reason to consider proper means to impose restraint and to provide some redress from injury. There is therefore a balance to be struck, in situations like this one, between deterring constitutional violations and freeing high officials to make the lawful decisions necessary to protect the Nation in times of great peril." *Id.*

The case here does not implicate national security, prison policy, or any major executive branch decision; indeed, the Individual Defendants largely ignored and violated existing Federal Regulations and Bureau of Prisons policy by engaging in excessive force and deliberate indifference. The Fifth Amendment claims strike at the heart of *Bivens*—deterrence of specific, individual federal

11

agents who directly violated Constitutional rights. The fact that the Supreme Court already accepts Eighth Amendment violations for the exact same conduct strongly suggests that *Bivens* is warranted—even if it is considered a "new" context—to prevent the same Constitutional violations for pretrial detainees, who enjoy more rights, privileges, and protections than convicted, sentenced prisoners.

The Fourth Amendment claims are even stronger. In its *Abbasi* decision limiting *Bivens* contexts, the Supreme Court emphasized that it did "not intend[] to cast doubt on the continued force, or even the necessity of *Bivens* in the search-and-seizure context in which it arose." *Id.* at 1856. *Bivens* is "settled law" and a "fixed principle" in the "common and recurrent sphere of law enforcement." *Id.* at 1857. Furthermore, there is established precedent limiting Fourth Amendment claims for prisoners and pretrial detainees. The Courts have long established that most searches conducted by prisons relate to a legitimate governmental objective—the safety of staff and other prisoners. Thus, prisons can freely conduct searches incident to arrival, court appearance, visitation, and other legitimate searches where the prisoner may obtain contraband. However, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell*, 441 U.S. at 545. "There is no iron curtain drawn between the Constitution and the prisons of this country." *Id.* (quoting *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974). "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). "When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights." *Procunier v. Martinez*, 416 U.S. 396, 405-06 (1974). Furthermore, pretrial detainees are afforded even more Constitutional rights. Thus, *Bivens* should apply equally to those presumed guilty and detained pretrial just as it

12

does for those presumed innocent and released pretrial. Once again, the fact that the Supreme Court already accepts Fourth Amendment violations for the exact same conduct strongly suggests that *Bivens* is warranted—even if it is considered a "new" context—to prevent the same Constitutional violations for pretrial detainees. The fact that the Courts have strongly limited what Fourth Amendment rights pretrial detainees maintain only strengthens the argument to establish this "new" *Bivens* context—Courts can already screen and quickly discard meritless claims.

### 2.   Special factors do not command hesitation in recognizing a damages remedy

This case is unlike *Abbasi*. It does not implicate national security, prison policy, executive branch policy, or any special factors mentioned by the Supreme Court. The only remaining question is whether the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671 *et seq.,* precludes a *Bivens* remedy. This Court should hold that it does not.

"First, the existence of an FTCA remedy does not foreclose an analogous remedy under *Bivens*. According to the Supreme Court, it is 'crystal clear that Congress intended the FTCA and *Bivens* to serve as parallel and complementary sources of liability.'" *Bristrian v. Levi*, 912 F.3d at 92 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. at 68). "For example, in *Carlson*, the Supreme Court specifically noted that a '*Bivens* remedy... is a more effective deterrent than the FTCA' because it 'is recoverable against individuals[.]'" *Id.* (quoting *Carlson*, 446 U.S. at 21). "The Court continued by saying that the 'FTCA is not a sufficient protector of the citizens' constitutional rights, and without a clear congressional mandate we cannot hold that Congress relegated [prisoners] exclusively to the FTCA remedy.'" *Id.* (quoting *Carlson*, 446 U.S. at 23); see also *Bush v. Lucas*, 462

13

U.S. 367, 378 (1983) ("No statute expressly declared the FTCA remedy to be a substitute for a *Bivens* action.").

   While the Second Circuit has yet to weigh in, the Courts of this Circuit have agreed with the Third Circuit. See *Bueno Diaz v. Mercurio*, 442 F. Supp. 3d at 710 (the FTCA does not preclude a *Bivens* remedy, and the Supreme Court "has repeatedly emphasized that an FTCA claim is simply not a substitute for a *Bivens* action") (citations and quotation marks omitted); *Powell v. United States*, No. 19-CV-11351, 2020 WL 5126392 at *10 (S.D.N.Y. Aug. 31, 2020) ("[T]he FTCA facilitates only liability in tort against the United States itself, whereas the *Bivens* remedy vindicates violations of constitutional rights by federal employees... The FTCA standing on its own does not give the Court reasons to hesitate in extending *Bivens*.") (citations and quotation marks omitted).

   The reasoning is sound: *Bivens* vindicates violations of constitutional rights by federal employees. The entire point of *Bivens* is to *deter* federal employees from violating Constitutional rights of the American People. If the People cannot sue the individuals who violate their rights, then there is no deterrent—officers can continue to violate constitutional rights with impunity. Accordingly, this Court should find that the FTCA standing on its own does not give the Court reasons to hesitate in extending *Bivens*. The Court should ultimately adopt these "new" *Bivens* contexts, which are, at most, a miniscule extension of the existing *Bivens* contexts.

## V.    MOTION TO SUSPEND DISCOVERY

The Defendants moved for a stay of discovery pursuant to Fed. R. Civ. P. 26(c) on October 11, 2021.The Defendant's motion should be denied. As addressed in section IV, the Individual Defendants are liable under *Bivens*. But, regardless, even if the Court chose to dismiss the claims against the Individual Defendants, Plaintiff is still entitled to discovery under the FTCA; the defendants even cite the FTCA allegations as the primary reason the *Bivens* relief is unavailable. "Indeed, plaintiff allegedly adhered to the PLRA's administrative requirements and has asserted FTCA claims in this case, thus pursuing an alternative remedy for his alleged injuries." Dkt. 76 at *2. To the Plaintiff's knowledge, the Defendants have not moved to dismiss the FTCA allegations, and would not be entitled to dismissal as the Plaintiff has adhered to all jurisdictional requirements and a dismissal motion would not be appropriate. Thus, whether the claims against the Individual Defendants proceed or not is entirely irrelevant—the Plaintiff is entitled to discovery, including discovery from the Individual Defendants themselves, pursuant to the FTCA claims. Accordingly, the Court should deny the Defendant's motion to stay discovery.

## VI.   CONCLUSION

For the foregoing reasons, the Court should determine that the Plaintiff's Fourth Amendment, Fifth Amendment deliberate indifference, and Fifth Amendment excessive force claims are valid, existing *Bivens* remedies. Alternatively, the Court should extend the *Bivens* remedy as all three complaints are similar to existing *Bivens* contexts and special factors do not command hesitation in recognizing a damages remedy. Accordingly, the Court should deny the Individual Defendants' Motion for Dismissal.

Finally, the Court should deny the Defendants' Motion to Suspend Discovery.

Dated: New York, New York
    December 15, 2021

Respectfully submitted,

Joshua Adam Schulte
Slave #79471054
Metropolitan Detention Center (MDC)
P.O. Box 329002
Brooklyn, NY 11232

16

**Federal Rules of Appellate Procedure Form 7.   Declaration of Inmate Filing**

United States District Court for the District of _____Sᴅɴʏ_____

Schulte
          Plaintiff,            )
                                )        Case No. _20-W-2745 (P6G) (6w6)_
     v.                         )
                                )
BoP et al                       )
          Defendant.            )
                                )

      I am an inmate confined in an institution. Today, ___12/15/21___ [insert date], I am depositing the _Opp. Dismss_ [insert title of document; for example, "notice of appeal"] in this case in the institution's internal mail system. First-class postage is being prepaid either by me or by the institution on my behalf.

      I declare under penalty of perjury that the foregoing is true and correct (see 28 U.S.C. § 1746; 18 U.S.C. § 1621).

Sign your name here ___[signature]___

Signed on ___12/15/21___ [insert date]

[**Note to inmate filers:** If your institution has a system designed for legal mail, you must use that system in order to receive the timing benefit of Fed. R. App. P. 4(c)(1) or Fed. R. App. P. 25(a)(2)(A)(iii).]

Rev. 12.1.2018

Josh Schulte #7471054
MDC
P.O. Box 329002
Brooklyn, NY 11232





ATTN: 20-CV-2795 (PGG) (GWG)
Pro Se Intake Office
United States District Court SDNY
500 Pearl Street
NY, NY 10007

2021 DEC 21  AM 10:05
SDNY PRO SE OFFICE
RECEIVED