UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSHUA ADAM SCHULTE,<br><br>                 Plaintiff,<br><br>                 -v-<br><br>UNITED STATES OF AMERICA, TIMOTHY VALENTINE, JOHN BARRETT, BRIAN THIROWAY, MICHAEL SINKVICH, MARK BURNS, MICHAEL GETCHEY, JAMEY WELCH, and UNKNOWN BOP OFFICERS THAT HAVE NOT YET BEEN IDENTIFIED,<br><br>                 Defendants. | 20 Civ. 2795 (PGG) (GWG) |

### REPLY MEMORANDUM OF LAW IN SUPPORT OF THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2633/2743
E-mail: tara.schwartz@usdoj.gov
             ellen.blain@usdoj.gov

TARA SCHWARTZ
ELLEN BLAIN
Assistant United States Attorneys
– Of Counsel –

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ..................................................................................................................................... 1

    I.     PLAINTIFF HAS NOT ALLEGED A FOURTH AMENDMENT VIOLATION ...... 1

    II.    PLAINTIFF DOES NOT HAVE A *BIVENS* REMEDY UNDER THE FIFTH AMENDMENT FOR DELIBERATE INDIFFERENCE TO MEDICAL NEEDS ..... 4

    III.   PLAINTIFF DOES NOT HAVE A *BIVENS* REMEDY UNDER THE FIFTH AMENDMENT FOR EXCESSIVE FORCE ............................................................ 7

    IV.   SPECIAL FACTORS DO NOT COUNSEL IN FAVOR OF EXTENDING A *BIVENS* REMEDY TO PLAINTIFF'S CLAIMS ....................................................... 8

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Abdoulaye v. Cimaglia*, No. 15 Civ. 4921, 2018 WL 1890488 (PKC) (S.D.N.Y. Mar. 30, 2018) 8

*Alster v. Goord*, No. 05 Civ. 10883, 2010 WL 3835081 (S.D.N.Y. Sept. 10, 2010) ...................... 6

*Amakar v. Coombe*, No. 96 Civ. 1622, 2002 WL 523388 (S.D.N.Y. Mar. 29, 2002).................... 5

*Bell v. Wolfish*, 441 U.S. 520 (1979) ........................................................................................ 1, 2

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ................................................................................................................................... passim

*Block v. Rutherford*, 468 U.S. 576 (1984) ..................................................................................... 2

*Bueno Diaz v. Mercurio*, 442 F. Supp. 3d 701 (S.D.N.Y. 2020)..................................................... 8

*Cain v. Jackson*, No. 05 Civ. 3914, 2007 WL 2193997 (S.D.N.Y. July 27, 2007) ........................ 6

*Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520 (6th Cir. 2020) ............................................. 10

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)....................................................... i

*Cruz v. Hastings*, No. 20 Civ 4392 (VEC) (BCM), 2021 WL 4691375 (S.D.N.Y. Oct. 6, 2021) 10

*Cuoco v. Moritsugu*, 222 F.3d 99 (2d Cir. 2000)........................................................................... 4

*Dumel v. Westchester Cty.*, No. 19 Civ. 2161 (KMK), 2021 WL 738365 (S.D.N.Y. Feb. 25, 2021) ........................................................................................................................................ 5

*Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318 (2012) ................. 2, 3

*Frith v. City of N.Y.*, No. 15 Civ. 5688 (NRB), 2016 WL 4705155 (S.D.N.Y. Aug. 25, 2016)..... 7

*Haynes v. City of New York*, 19 Civ. 1925 (NRB), 2020 WL 4926178 (S.D.N.Y. Aug. 20, 2020) 5

*Hudson v. Palmer*, 468 U.S. 517 (1984)................................................................................... 2, 3

*Hunt v. Matevousian,* 336 F. Supp. 3d 1159 (E.D. Cal. 2018) ...................................................... 8

*Jacobs v. Alam*, 915 F.3d 1028 (6th Cir. 2019) ............................................................................ 8

*Jelen v. United States Marshals Serv.*, No. 18 Civ. 680, 2020 WL 1503566 (S.D.N.Y. Mar. 30, 2020) ........................................................................................................................................ 6

*Johnson v. Wright*, 412 F.3d 398 (2d Cir. 2005) .......................................................................... 4

*Jones v. Avanzato*, No. 14 Civ. 2044, 2016 WL 183565 (S.D.N.Y. Jan. 13, 2016) ....................... 7

*Lehal v. Central Falls Detention Facility Corp.*, No. 13 Civ. 3923 (DF), 2019 WL 1447261 (S.D.N.Y. Mar. 15, 2019) ........................................................................................................ 8

*Lowrance v. Coughlin*, 862 F. Supp. 1090 (S.D.N.Y. 1994).......................................................... 6

*Malsh v. Austin*, 901 F. Supp. 757 (S.D.N.Y. 1995)...................................................................... 6

*Martinez v. Aycock-W.*, 164 F. Supp. 3d 502 (S.D.N.Y. 2016) ..................................................... 6

*Martinez v. D'Agata*, No. 16 Civ. 44 (VB), 2019 WL 6895436 (S.D.N.Y. Dec. 18, 2019) .......... 4

*Mitchell v. N.Y.C. Dep't of Corr.*, No. 10 Civ. 292 (RJH), 2011 WL 503087 (S.D.N.Y. Feb. 14, 2011) .................................................................................................................................. 5

*Montgomery v. Hall*, No. 11 Civ. 4645 (PAC) (GWG), 2013 WL 1982920 (S.D.N.Y. May 15, 2013), *report and recommendation adopted*, 2013 WL 3816706 (S.D.N.Y. July 22, 2013) .................................................................................................................................................. 3

*Pinson v. U.S. Dep't of Just.*, 514 F. Supp. 3d 232 (D.D.C. 2021) ............................................... 10

*Ramirez v. Tatum*, No. 17 Civ. 7801 (LGS), 2018 WL 6655600 (S.D.N.Y. Dec. 19, 2018) ......... 8

*Roundtree v. City of New York*, No. 15 Civ. 8198, 2018 WL 1586473 (S.D.N.Y. Mar. 28, 2018) 5

*Salahuddin v. Goord*, 467 F.3d 263 (2d Cir. 2006) ...................................................................... 4

*Smith v. Carpenter*, 316 F.3d 178 (2d Cir. 2003) ..................................................................... 5, 6

*Turkmen v. Ashcroft*, No. 02 Civ. 2307 (DLI) (SMG), 2018 WL 4026734 (E.D.N.Y. Aug. 13, 2018) .............................................................................................................................. 10

*Turner v. Safley*, 482 U.S. 78 (1987) .......................................................................................... 10

*Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017) ............................................................................... 4, 7, 9

**Statutes**

18 U.S.C § 4042 ............................................................................................................................. 9

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 1

Defendants Timothy Valentine, John Barrett, Brian Thiroway, Michael Sinkovich, Mark Burns, Michael Getchey, and Jamey Welch (together, the "Individual Defendants"), respectfully submit this reply memorandum of law in further support of their motion to dismiss Plaintiff Joshua Schulte's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

As explained in the Individual Defendants' opening brief (ECF No. 72 ("Def. Br.")), Plaintiff does not have a remedy, pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for the constitutional violations he purportedly suffered resulting from a search that the Individual Defendants conducted in March 2020, when BOP officials believed a gun had been smuggled into the MCC. Plaintiff's brief in opposition (ECF No. 86 ("Pl. Opp.")) to the Individual Defendants' motion to dismiss does nothing to save his *Bivens* claims. For the reasons explained in the Individual Defendants' opening brief and below, the amended complaint (ECF No. 33 ("Am. Compl.")) should be dismissed against the Individual Defendants.

## ARGUMENT

### I. PLAINTIFF HAS NOT ALLEGED A FOURTH AMENDMENT VIOLATION

In his opposition brief, Plaintiff argues that he has a *Bivens* remedy because the Individual Defendants' alleged x-ray and body cavity search of Plaintiff and their alleged search of his cell constituted a Fourth Amendment violation, because those actions were "without probable cause" and unrelated to any "legitimate governmental objective." (Pl. Opp. 5-6). Plaintiff's own allegations belie his claim. Well-established case law on the scope of inmates' and pretrial detainees' Fourth Amendment rights confirms that Plaintiff fails to state a Fourth Amendment *Bivens* claim.

Courts have made clear that actions like those alleged here fail to state a claim. The Supreme Court's opinion in *Bell v. Wolfish*, 441 U.S. 520 (1979), is the starting point for understanding how the Fourth Amendment applies in the jail and prison context. That case addressed a rule requiring

that pretrial detainees expose their body cavities for visual inspection as part of a strip search conducted after every contact visit with a person from outside the institution. *Id*. at 558. The plaintiff inmate argued that there was no security justification for the searches because there had been only one instance where an inmate attempted to sneak contraband back into the facility. *Id*. at 559, 577-578. Nonetheless, deferring to the judgment of the correctional officials that the inspections served to discover and deter the smuggling of weapons, drugs, and other prohibited items, the Court upheld the search policy. *Id*. at 558. The Court explained that there is no mechanical way to determine whether intrusions on an inmate's privacy are reasonable; the need for a particular search must be balanced against the resulting invasion of personal rights. *Id*. Importantly, the Court noted that the task of determining whether a policy is reasonably related to legitimate security interests is peculiarly within the province and professional expertise of corrections officials. *Id*. at 548.

Policies designed to keep contraband out of jails and prisons have been upheld in cases since *Bell*. In *Block v. Rutherford*, 468 U.S. 576, 586 (1984), the Court concluded that the jail could ban all contact visits because of the threat that such visits would introduce drugs, weapons, and contraband into the facility. In *Hudson v. Palmer*, 468 U.S. 517, 522-523 (1984), the Court upheld the constitutionality of the practice of prison officials performing random searches of inmate lockers and cells even without reason to suspect a particular individual was concealing a prohibited item. The Court rejected the contention that searches need be conducted only pursuant to an established policy or based on reasonable suspicion because such requirement would undermine the ability of the jail officials to deter the possession of contraband. *Id*. at 528-29.

Likewise, in *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 325-28 (2012), the plaintiff argued that it violated the Fourth Amendment for jail officials to require that all inmates—including those arrested for minor offenses and for whom the jail officials had no reason to suspect were concealing weapons, drugs, or other contraband—undergo close visual inspection as

a routine part of the intake process. Noting that "[t]he difficulties of operating a detention center must not be underestimated by the courts," the Court held that deference must be given to jail officials unless there is "substantial evidence" demonstrating their response to the situation is exaggerated. *Id*. at 328.

This line of cases establishes that jail officials must be permitted to establish policies and to conduct reasonable searches to detect and deter the possession of contraband in their facilities, and that, a regulation impinging on an inmate's constitutional rights must be upheld "if it is reasonably related to [a] legitimate penological interest." *Florence*, 566 U.S. at 326; *see also Montgomery v. Hall*, No. 11 Civ. 4645 (PAC) (GWG), 2013 WL 1982920, at *3 (S.D.N.Y. May 15, 2013) (upholding policy of "[r]equiring detainees at the MDC to submit to a strip search prior to departing the facility for a court appearance" to prevent the smuggling of contraband), *report and recommendation adopted*, 2013 WL 3816706 (S.D.N.Y. July 22, 2013).

Here, Plaintiff has failed to allege that the policy implemented by the BOP that resulted in the Individual Defendants' alleged search of Plaintiff and his cell was unrelated to a legitimate law enforcement interest. As Plaintiff himself concedes, at the time that the Individual Defendants searched Plaintiff and his cell, BOP officials had suspected that a gun had been smuggled into the MCC. (*See* Am. Compl. 8). The Individual Defendants' searches of Plaintiff and his cell were conducted in response to this threat. Given this acute threat, Plaintiff has not alleged that the Individual Defendants' actions were unrelated to a "legitimate governmental objective." (Pl. Br. at 6); *see Hudson*, 468 U.S. at 529 ("Random searches of inmates, individually or collectively, and their cells and lockers are valid and necessary to ensure the security of the institution and the safety of inmates and all others within its boundaries. This type of search allows prison officers flexibility and prevents inmates from anticipating, and thereby thwarting, a search for contraband."). As a result, Plaintiff's purported Fourth Amendment claim should be dismissed.

## II. PLAINTIFF DOES NOT HAVE A *BIVENS* REMEDY UNDER THE FIFTH AMENDMENT FOR DELIBERATE INDIFFERENCE TO MEDICAL NEEDS

Plaintiff now argues that he has also asserted a *Bivens* claim under the Fifth Amendment for deliberate indifference to serious medical needs, asserting that Individual Defendants violated his Fifth Amendment due process rights by failing to obtain medical assistance for him, for injuries that the Individual Defendants themselves caused. (*See* Pl. Opp. 8-9). But Plaintiff's attempt to shoehorn his excessive force claim into a deliberate indifference claim to avoid the proscriptions of *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017), ultimately fails.[1]

In order to establish a claim for deliberate indifference to medical needs, a prisoner must satisfy two requirements—one objective and one subjective. *See Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005). First, the prisoner must prove that the alleged deprivation of medical treatment is—in objective terms—"sufficiently serious," that is, the prisoner must prove that his medical need was "a condition of urgency, one that may produce death, degeneration, or extreme pain." *See id*. Second, the prisoner must prove that the charged official acted with a "sufficiently culpable state of mind." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). "This requires that the prisoner prove that the charged official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Johnson*, 412 F.3d at 403.

"Although deliberate indifference claims are most often asserted against medical personnel,

---

[1] As a threshold matter, "deliberate indifference to medical needs claims brought against federal actors under *Bivens* [by pretrial detainees] are analyzed under the Fifth Amendment's Due Process Clause" rather than the Eighth Amendment, because "[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner—neither cruelly and unusually nor otherwise.'" *Martinez v. D'Agata*, No. 16 Civ. 44 (VB), 2019 WL 6895436, at *7 (S.D.N.Y. Dec. 18, 2019) (citations omitted). The two claims are analyzed similarly. *See Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000).

4

non-medical personnel may also be found to have engaged in deliberate indifference." *Dumel v. Westchester Cty.*, No. 19 Civ. 2161 (KMK), 2021 WL 738365, at *10 (S.D.N.Y. Feb. 25, 2021) (internal citations, quotations, and alterations omitted). "Courts in this Circuit have frequently observed that to establish a deliberate indifference claim against nonmedical personnel, 'a plaintiff must prove that the nonmedical prison personnel [i] intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problems known to the attendant prison personnel or [ii] that the inmate suffered a complete denial of medical treatment.'" *Id.* (quoting *Haynes v. City of New York*, 19 Civ. 1925 (NRB), 2020 WL 4926178, at *14 n. 28 (S.D.N.Y. Aug. 20, 2020)).

But of course, even when a plaintiff alleges that the non-medical personnel intentionally delayed access to medical care, not every such delay violates that individual's constitutional rights. *See Mitchell v. N.Y.C. Dep't of Corr.*, No. 10 Civ. 292 (RJH), 2011 WL 503087, at *4 (S.D.N.Y. Feb. 14, 2011) ("A delay in medical care does not itself violate an inmate's Eighth Amendment rights unless the delay reflects deliberate indifference to a serious risk of health or safety, to a life threatening or fast-degenerating condition or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment." (citing *Amakar v. Coombe*, No. 96 Civ. 1622, 2002 WL 523388, at *8 (S.D.N.Y. Mar. 29, 2002)). Where a plaintiff alleges deliberate indifference as a result of a delay in medical care, the primary inquiry is whether the plaintiff has plausibly alleged that the delay caused or exacerbated his injuries. *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003). Notably, "[c]ourts in this Circuit have repeatedly held that pain experienced for even longer than two or three hours does not rise to the level of an Eighth Amendment violation." *Mitchell*, 2011 WL 503087, at *4 (dismissing deliberate indifference claim where plaintiff alleged that he was "left in extreme pain for two or three hours, [but did] not allege that he was ultimately denied proper

5

care).[2] In considering whether a delay constituted deliberate indifference, the actual medical consequences that result from the alleged delay are "highly relevant" as well. *Smith*, 316 F.3d at 187.

Here, Plaintiff has failed to meet either the objective or subjective prong for a deliberate indifference claim. Construed plausibly, Plaintiff claims that the Individual Defendants exhibited deliberate indifference to his serious medical needs because, during the course of executing their search, they caused him to sustain a dislocated shoulder, cut wrists, bruised ankles and legs, and a self-diagnosed concussion, for which they did not provide him medical care. (*See generally*, Am. Compl.). These alleged injuries fail to rise to the level of "sufficiently serious," that is, that his medical need was "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Johnson*, 412 F.3d at 403; *see Martinez v. Aycock-W.*, 164 F. Supp. 3d 502, 511 (S.D.N.Y. 2016) (finding plaintiff's injuries of back and neck pain to be insufficiently serious because they were treatable with over-the-counter pain medication and an injection and did not cause plaintiff any permanent harm); *Malsh v. Austin*, 901 F. Supp. 757, 762-63 (S.D.N.Y. 1995) (summarizing cases, including those finding that a mild concussion and broken jaw, a kidney stone, and a broken finger did not satisfy the constitutional "serious medical need" standard); *cf. Lowrance v. Coughlin*, 862 F. Supp. 1090, 1119 (S.D.N.Y. 1994) (finding deliberate indifference where defendants denied plaintiff a physician-prescribed knee operation for two years).

Second, Plaintiff fails to meet the requirements of the subjective prong of a deliberate

---

[2]  *See also Jelen v. United States Marshals Serv.*, No. 18 Civ. 680, 2020 WL 1503566, at *7 (S.D.N.Y. Mar. 30, 2020) (holding that Deputy U.S. Marshals one hour delay in transporting plaintiff to hospital jail did not constitute deliberate indifference to medical needs despite plaintiff's claim that he complained of rectal bleeding and agonizing pain); *Alster v. Goord*, No. 05 Civ. 10883, 2010 WL 3835081, at *11 (S.D.N.Y. Sept. 10, 2010) (dismissing claim where corrections staff waited two days to send plaintiff to a hospital after he complained of abdominal pain); *Cain v. Jackson*, No. 05 Civ. 3914, 2007 WL 2193997, at *2, *6 (S.D.N.Y. July 27, 2007) (dismissing claim where defendant allegedly waited several hours to call medical unit regarding plaintiffs complaints of back pain).

indifference claim. He argues that the Individual Defendants were aware that he sustained these injuries as a result of his "vocal remonstration to the Individual Defendants that they were hurting his wrists by yanking on his handcuffs," his "anxious cries," and "cries of pain." (*See* Pl. Opp. 8). But the amended complaint lacks *any* allegation that: (i) he actually requested medical attention from the Individual Defendants; (ii) he needed immediate medical attention; (iii) he suffered injuries so serious it would have been obvious to the Individual Defendants that he needed urgent medical attention; *or* (iv) he suffered from a serious injury and was ultimately denied medical attention.

At most, he has alleged that the Individual Defendants, who are not themselves medical providers, *delayed* his ability to obtain medical treatment for the injuries by continuing to conduct the search despite knowing that Plaintiff was in pain. But he does not claim that the delay in his ability to obtain medical care for his alleged injuries was more than two or three hours or that the delay caused or exacerbated his alleged injuries. He has thus fallen far short of establishing a constitutional violation. *Cf. Jones v. Avanzato*, No. 14 Civ. 2044, 2016 WL 183565, at *5 (S.D.N.Y. Jan. 13, 2016) ("[A] delay in treatment does not necessarily invoke the Eighth Amendment. The Second Circuit has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment[,] ignored a life-threatening and fast-degenerating condition for three days, or delayed major surgery for over two years."); *see Frith v. City of N.Y.*, No. 15 Civ. 5688 (NRB), 2016 WL 4705155, at *2 (S.D.N.Y. Aug. 25, 2016) (finding no deliberate indifference where plaintiff alleged a one-day delay in treatment of an infection, but not "that the delay itself caused or exacerbated the infection, caused him extreme pain, or caused any permanent harm").

### III.   PLAINTIFF DOES NOT HAVE A *BIVENS* REMEDY UNDER THE FIFTH AMENDMENT FOR EXCESSIVE FORCE

Plaintiff also argues that, post-*Abbasi*, he has a *Bivens* remedy under the Fifth Amendment

7

for excessive force.³ (*See* Pl. Opp. 9-10). In support of this contention, he cites three cases, none of which advance his cause and none of which are binding on this Court. In all three cases, *Jacobs v. Alam*, 915 F.3d 1028, 1038 (6th Cir. 2019), *Bueno Diaz v. Mercurio*, 442 F. Supp. 3d 701, 708-09 (S.D.N.Y. 2020), and *Lehal v. Central Falls Detention Facility Corp.*, No. 13 Civ. 3923 (DF), 2019 WL 1447261, at *11 (S.D.N.Y. Mar. 15, 2019), the courts found that the *Bivens* claims raised by the plaintiffs fell within the contours of *Bivens* itself because they raised claims for excessive force executed during the course of an arrest. Here Plaintiff makes no claims about an arrest, but rather claims that the Individual Defendants utilized excessive force in executing a search while he was already in custody. Plaintiff's claim thus presents a meaningfully different circumstance than the claim presented in *Bivens*. Courts in this district and elsewhere have repeatedly held that excessive force claims, outside the context of an arrest, constitute an extension of *Bivens* and thus have declined to recognize such a claim. *See, e.g., Ramirez v. Tatum*, No. 17 Civ. 7801 (LGS), 2018 WL 6655600, at *5 (S.D.N.Y. Dec. 19, 2018) ("As a result, there is no *Bivens* remedy for retaliation or excessive force claims."); *Abdoulaye v. Cimaglia*, No. 15 Civ. 4921, 2018 WL 1890488 (PKC), at *6 (S.D.N.Y. Mar. 30, 2018) (declining to extend a *Bivens* remedy for a pretrial detainee's excessive force claim under the Fifth Amendment); *Hunt v. Matevousian,* 336 F. Supp. 3d 1159, 1170 (E.D. Cal. 2018) (declining to extend a *Bivens* remedy to an inmate's Eighth Amendment excessive force claim).

## IV. SPECIAL FACTORS DO NOT COUNSEL IN FAVOR OF EXTENDING A *BIVENS* REMEDY TO PLAINTIFF'S CLAIMS

Plaintiff argues that even if the Court finds that his case presents a new *Bivens* context, the

---

³ Contrary to Plaintiff's contention, the Individual Defendants do not argue that Plaintiff has lesser rights as a pretrial detainee, protected by the Fifth Amendment, than convicted prisoners do under the Eighth Amendment. (*See* Pl. Opp. 6). Rather, the Individual Defendants contention is that Plaintiff does not have a *Bivens* remedy for a claim of excessive force, under any provision of the Constitution. (*See* Def. Br. 9-15).

8

Court should not hesitate in recognizing a damages remedy for the conduct he alleges in order deter federal officers from committing constitutional violations because, among other things, the Federal Tort Claims Act is not up to the task. (*See* Pl. Opp. 10-15). He implores the judiciary to "uphold its duty to the Constitution" despite separation-of-powers principles because Congress has failed to act to protect his Constitutional rights. (*See id*. at 10-11).

While *Bivens* actions serve to deter federal officers from committing Constitutional violations, that is not the only consideration the Court must undertake in determining whether to extend Plaintiff a remedy. The special factors inquiry "concentrate[s] on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi,* 137 S. Ct. at 1857-58. If there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, courts must refrain from creating that kind of remedy. *See id*. at 1858. Further, if Congress has created *any* alternative, existing process for protecting the injured party's interest that itself may amount to a convincing reason for the Judiciary to refrain from providing a new and freestanding remedy in damages. *See id*.

In *Abbasi* itself, the Supreme Court carefully considered the deterrent effect that *Bivens* actions have on federal officers and reached the conclusion that it was for Congress, and not the Judiciary, to strike the proper balance between deterring constitutional violations and freeing officials to adopt detention policies in the wake of the September 11 attacks. *Id*. at 1863. While Plaintiff is correct that *Abbasi*, unlike the present case, implicated a major executive branch decision related to national security (*see* Pl. Opp. 10-11), this case is akin to *Abbasi* in that it involves the risk of interfering with BOP policy—specifically, with respect to executing searches in response to acute security threats, a task which Congress has delegated to the BOP. *See* 18 U.S.C § 4042.

As the Supreme Court has noted, "[r]unning a prison is an inordinately difficult undertaking

9

that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley*, 482 U.S. 78, 84-85 (1987). Expanding *Bivens* to claims brought by pretrial detainees for violations of the Fourth or Fifth Amendment would create a vast new scheme of liability. *See Pinson v. U.S. Dep't of Just.*, 514 F. Supp. 3d 232, 242 (D.D.C. 2021) (recognizing new prisoner *Bivens* claim "could create substantial costs that interfere with prison management indirectly" (internal quotation marks omitted). Thus, courts considering the extension of *Bivens* to new areas in the prison context have routinely noted that the administration of the federal prison system is a special factor counseling hesitation against expanding *Bivens*. *See, e.g., Cruz v. Hastings*, No. 20 Civ 4392 (VEC) (BCM), 2021 WL 4691375, at *7 (S.D.N.Y. Oct. 6, 2021) ("Even if there were no alternative remedies, the Court should still conclude that special factors counsel hesitation—namely, separation-of-powers concerns regarding the administration of penal institutions."); *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020) ("Legislative action suggesting that Congress does not want a damages remedy counsels against judicial do-it-yourself projects. Congress paid close attention to inmate constitutional claims when it enacted the [PLRA]." (internal citations omitted)); *Retzold v. Rostollan*, 946 F.3d 242, 248 n.2 (5th Cir. 2019) ("[W]e are unlikely to imply a *Bivens* remedy for this new context as 'special factors' counsel hesitation in federal prison administration."); *Turkmen v. Ashcroft*, No. 02 Civ. 2307 (DLI) (SMG), 2018 WL 4026734, at *13 (E.D.N.Y. Aug. 13, 2018) (collecting cases in which courts have declined to extend *Bivens* where claims arise in prison or jail context). For this reason, and those explained in the Individual Defendants' opening brief, the Court should find special factors counsel hesitation in expanding *Bivens* to Plaintiff's claims.

## CONCLUSION

For the reasons set out here and in the Individual Defendants' opening brief, the Individual Defendants respectfully request that the Court dismiss Plaintiff's claims against them.

Date:  New York, New York
       January 4, 2022

                                Respectfully submitted,

                                DAMIAN WILLIAMS
                                United States Attorney
                                Southern District of New York

By:    */s/ Tara Schwartz*
        TARA SCHWARTZ
        ELLEN BLAIN
        Assistant United States Attorneys
        86 Chambers Street, 3rd Floor
        New York, New York 10007
        Telephone: (212) 637-2633/2793
        Email: tara.schwartz@usdoj.gov
                  ellen.blain@usdoj.gov