UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
JOSHUA ADAM SCHULTE,
                                                            :
                    Plaintiff,
          - v. -                                            :              20 Civ. 2795 (PGG) (GWG)

UNITED STATES OF AMERICA, et al.,                           :

                    Defendants.                             :

                                                            :
------------------------------------------------------------x


**MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS'**

**MOTION FOR SUMMARY JUDGMENT**


**Michael W. Martin**
**Ian Weinstein**
**Lincoln Square Legal Services, Inc.**
**Fordham University School of Law**
**150 West 62nd Street, Ninth Floor**
**New York, N.Y. 10023**
**212 636 6934**

**Legal Interns:**
**Nico Corti**
**Rachel Ehrlich**
**Callie Ives**
**Lamar Smith**

## Table of Contents

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................... 1

PROCEDURAL HISTORY .................................................................................................. 3

STATEMENT OF FACTS ..................................................................................................... 5

    1.   Officers Storm Mr. Schulte's Cell and Initiate Search on March 8, 2020 ................................. 5

    2.   Mr. Schulte Falls Multiple Times While the Officers Drag Him Through the MCC ............. 6

    3.   The Recreation Room Off-Camera Assault ................................................................................. 7

ARGUMENT ......................................................................................................................... 8

    I.   This Pre-Discovery Summary Judgment Motion Must Be Rejected ...................................... 8

        A.   The Movant's Heavy Burden ....................................................................................................... 8

        B.   This Set of Videos is Not Conclusive or Dispositive ................................................................. 12

        C.   The Facts Support a Remedy for Mr. Schulte ............................................................................ 13

    II.   Alternatively, If the Court Does Not Deny Summary Judgement, It Should Defer
        Consideration as per Fed. R. Civ. P. 56(d) ................................................................................ 15

CONCLUSION ..................................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Alphonse Hotel Corp. v. Tran*, 828 F.3d 146 (2d Cir. 2016) ....................................................... 15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................. 9

*Anemone v. Metro. Transp. Auth.*, 629 F.3d 97 (2d Cir. 2011) ................................................... 10

*Aulicino v. N.Y.C. Dept. of Homeless Servs.*, 580 F.3d 73 (2d Cir. 2009)................................... 8

*Barrows v. Brinker*, 36 F.4th 45 (2d Cir. 2022)......................................................................... 11

*Berman v. Williams*, 2019 WL 4450810 (S.D.N.Y. Sept. 17, 2019) ..................................... 10, 12

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)...... 3

*Brown v. Eli Lilly & Co.*, 654 F.3d 347 (2d Cir. 2011) ............................................................... 10

*Bygum v. City of Montgomery*, 2023 WL 2203591 (4th Cir. Feb. 24, 2023) ............................... 11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................................... 9

*F.D.I.C. v. Meyer*, 510 U.S. 471 (1994) ................................................................................... 13

*Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14 (2d Cir. 1995) ........................... 9

*Kalfus v. N.Y. & Presbyterian Hosp.*, 476 F. App'x 877 (2d Cir. 2012) .............................. 10, 11

*Lin v. City of New York*, 2016 WL 7439362 (S.D.N.Y. Dec. 21, 2016)...................................... 10

*Liranzo v. United States*, 690 F.3d 378 (2d Cir. 2012)............................................................... 13

*Marcavage v. City of New York*, 689 F.3d 98 (2d Cir. 2012) ...................................................... 10

*Oakley v. MSG Networks*, 2021 WL 5180229 (S.D.N.Y. Nov. 8, 2021) ...................................... 2

*Scott v. Harris*, 550 U.S. 372 (2007) ....................................................................................... 11

*Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95 (2d Cir. 2003) .................................................... 10

*Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 2020 WL 8771255 (E.D.N.Y. Dec. 29, 2020)....... 9

*Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506 (2d Cir. 1989) ........................ 9, 15

*Weinstock v. Columbia Univ.*, 224 F.3d 33 (2d Cir. 2000).......................................................... 10

*Wexler v. LVNV Funding, LLC.*, 2022 WL 16961125 (S.D.N.Y. Nov. 16, 2022) ......................... 9

**Statutes**

28 U.S.C. § 1346........................................................................................................... 3, 13

28 U.S.C. 2671 et seq........................................................................................................ 3, 13

42 U.S.C. § 1997e(e).............................................................................................................. 13

**Rules**

FED. R. CIV. P. 56......................................................................................................... 8, 15, 16

Plaintiff Joshua Schulte respectfully submits this memorandum of law opposing defendants, United States of America, Timothy Valentine, John Barrett, Brian Thiroway, Michael Sinkovich, Mark Burns, Michael Getchey, and Jamey Welch ("Defendants") motion for pre-discovery Summary Judgment.

## PRELIMINARY STATEMENT

The defendants' premature motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 must be rejected. There are several clusters of disputed material facts. All are amenable to development in discovery, but only a factfinder can make the credibility determinations needed to resolve them. Those material disputes include, but are not limited to:

- Whether he was dragged backwards by his handcuffed arms, was tripped, and shoved to the ground, which the video supports, and the defendants deny.

- Whether, while out of view of the camera, he was forcefully and injuriously shoved into a wall, and made to endure the freezing cold—as the video supports, yet the defendants deny.

- Whether he suffered a head injury, lacerations, bruising, a dislocated shoulder, or other injury, as the video does not directly disprove, and the defendants deny.

Despite these material disputes, the movants seek pre-discovery summary judgment, asserting that a compilation of 35 silent surveillance videos, with gaps in which significant action occurs off screen, puts all disputes to rest. Their motion is legally and factually incorrect. It must be rejected.

Pre-discovery summary judgment is exceptional and reserved for those cases in which video irrefutably and conclusively contradicts the plaintiff's claim. For example, the defendants rely upon a notorious public dispute between two high profile New Yorkers that thousands of

1

basketball fans witnessed in real time at Madison Square Garden.  That case presented multiple videos, at least one of which seemingly captured a complete, unobscured view of all the relevant action in a continuous shot.  *See Oakley v. MSG Networks*, 2021 WL 5180229, at \*5, \*8 (S.D.N.Y. Nov. 8, 2021) (granting summary judgement after an initial discovery production when the video was complete and dispositive).

Therefore, the government's analogy to this case is very strained.  Here, the segments leave the viewer uncertain about how the snippets relate to each other and how the labyrinthian space depicted fits together.   The perspective changes from clip to clip.  There are gaps in the sequence and some of the most important action takes place outside of the frame.  Videos #7, 8, and 35.[1] The effect is kaleidoscopic and confusing.

The video does show a large, well-equipped contingent of officers exerting complete and dominating coercive authority over Mr. Schulte as they parade through the Metropolitan Correctional Center (MCC), often dragging or leading him backwards and hunched over.  Videos #1, 2, and 7.  The video corroborates important aspects of Mr. Schulte's narrative as it also reveals lacunae fatal to the defendants' motion.  The video does not conclusively show that those officers did not act negligently, cause cognizable physical injury, or act unreasonably or deliberately for constitutional analysis.

Only after discovery could a factfinder properly analyze the video segments and other evidence to decide whom to credit and what inferences to draw.  The government's pre-discovery motion for Summary Judgement pursuant to Rule 56 of the Federal Rules of Civil Procedure must

---

[1] When the government provided the video files, each video was labeled with a number.  We have followed their same numbering system throughout our papers.

be rejected, or alternatively Mr. Schulte must be granted other remedies under Rule 56(d).  The defendants must begin to disclose the evidence, as almost all of it is in their exclusive control.

## PROCEDURAL HISTORY

On April 2, 2020, Mr. Joshua Adam Schulte filed a complaint, *pro se*, alleging causes of action against the United States and other defendants pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 et seq., and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  ECF 1.  He was, and remains, a pre-trial detainee in the custody of the Federal Bureau of Prisons.  Mr. Schulte is subject to Special Administrative Measures and is being held under distinctively restrictive conditions.    Criminal charges are pending against him in a separate action.

This civil lawsuit arises out of a search conducted on March 8, 2020, at the now shuttered MCC.  At the time of that search, the facility's deterioration was already evident from the lack of basic services and security; that search was part of a facility wide action to find firearms that had been smuggled into the jail.

Present counsel entered the case for the limited purpose of responding to the Defendants' pending Summary Judgment motion.  ECF 111.  Before this limited appearance, Mr. Schulte litigated *pro se* for more than two years.  His efforts were stymied by his very restrictive conditions of confinement.  He cannot, for instance, reliably receive and send timely mail.  *See e.g.* ECF 34, 39, 52, 67.  Additionally, his access to information is limited and carefully monitored.  His property, including his legal materials, has been repeatedly lost or seized.  ECF 109. Nonetheless, he eventually perfected service on the defendants in this case.  ECF 44-51. They filed answers. ECF 59.

On September 27, 2021, the defendants filed a Motion to Dismiss the claims against the individual defendants.  ECF 71.  They sought a stay of discovery on October 11, 2021.  ECF 75.  The Motion to Dismiss is the subject of a pending Report and Recommendation issued by Magistrate Judge Gabriel Gorenstein, ECF 93, as the defendants note in their Memorandum of Law.  *See* Memorandum of Law in Support of Defendants' Motion for Summary Judgment (hereinafter "Memo in Supp.") at 11.

On April 18, 2022, Magistrate Judge Gorenstein issued an Order Pursuant to Rule 16(b)(1)(A) denying the defendants' request to stay discovery on the Federal Tort Claims Act claims against the United States.  The Order noted that the Motion to Dismiss only addressed the status of the individual defendants subject to the *Bivens* claims and did not address the liability of the United States under the FTCA.  The parties were directed to agree on a discovery plan.  ECF 92.

On May 18, 2022, the defendants filed a pre-motion letter discussing their proposed "pre-discovery summary judgment motion," and suggesting a briefing schedule for the motion.  ECF 94.  That letter was memo endorsed on May 23, 2022, by this Court.  ECF 95.  Magistrate Judge Gorenstein then stayed discovery pending the outcome of the anticipated summary judgment motion. ECF 97.  The defendants' motion for summary judgment was filed on July 15, 2022.  ECF 101.

On September 8, 2022, the Court stayed the litigation of the instant summary judgment motion because Mr. Schulte's "laptop and materials related to this matter had been seized as 'contraband,'" and he was unable to respond.  ECF 109.  On October 20, 2022, Mr. Schulte requested that counsel be appointed.

On February 7, 2023, Michael Martin, Executive Director of Lincoln Square Legal Services, Inc., entered notice of appearance on behalf of Mr. Schulte for the limited purpose of responding to the pending motion for summary judgment and also proposed an amended briefing schedule. ECF 111-112.   On February 10, 2023, the Court endorsed the request for an amended briefing schedule.   ECF 113.   This Memorandum of Law in Opposition, along with a Rule 56.1 Counterstatement and Declarations in Support are filed pursuant to that schedule.

## STATEMENT OF FACTS

### 1.   Officers Storm Mr. Schulte's Cell and Initiate Search on March 8, 2020

At around 5 A.M. on March 8, 2020, nearly 20 BOP officers stormed Mr. Schulte's cell at the Metropolitan Corrections Center.   Complaint at 4; Declaration of Joshua Adam Schulte in Opposition to Defendants' Pre-Discovery Summary Judgement Motion (hereinafter Schulte's Declaration) at 2; Video #1.   The Group of officers pinned Mr. Schulte onto his bed as they twisted his arms behind his back and handcuffed him.   Video #1; Complaint at 5; Schulte's Declaration at 2.   Mr. Schulte's complaint alleges that they expressed an intent to target him because of the charges against him. Complaint at 5; Schulte's Declaration at 2.   One of the officers told the others, "He's the one with the child porn – they say three levels of encrypted child porn.   Let's get him." *See id*.   The video has no audio and cannot provide insight regarding what the officers said, at a deposition, witnesses would offer relevant evidence.   Video #1 and all others.

The video shows the team of guards pulling Mr. Schulte out of his bed, turning him backwards, and shoving his head down so that he was bowing with his back perpendicular to the floor.   Video #1.   From this position, Schulte was compelled to walk backwards into the hallway, hunched over, and arms handcuffed behind his back while in close contact with members of the

extracting team.  Video #1-2.  Mr. Schulte is seen being dragged backwards by his handcuffs.  *See e.g.*, Video # 3 and 15; Complaint at 5; Schulte's Declaration at 2.

Mr. Schulte's complaint describes him being threatened with a paintball gun-like device at close range.  Complaint at 5; Schulte's Declaration at 2.  This is corroborated in the video showing an officer carrying some sort of gun like object in close vicinity to Mr. Schulte's head, Video #2, #3, and # 15. Officers' actions are frequently obscured or outside of the frame.

**2.    Mr. Schulte Falls Multiple Times While the Officers Drag Him Through the MCC**

The defendants' video corroborates, rather than contradicts, Mr. Schulte's allegations that he fell hard to the ground multiple times as the officers dragged him through the MCC hallways. His first fall is caught on camera from two angles, but Mr. Schulte's body is obscured in both. Video #7-8.  In the first video, Mr. Schulte's body is not quite in the shot because he is being forced to walk hunched over.  Video #7.  And in another video, his body is briefly visible, but his fall is obscured by equipment.  Video #8.  Both videos clearly show several officers as they bend down to pick Mr. Schulte off the ground.  Videos #7-8.

Officers can also be seen smiling, laughing, and pointing at Mr. Schulte as he tries to pick himself up, and one officer even seems to gesture with his hands that they should roll him on the ground down the hallway.  Video #8.  Mr. Schulte describes how he fell so hard that he hurt his ankles upon impact.  Complaint at 5; Schulte's Declaration at 3.  He further alleges that the guards shouted at him and began to drag him before he was able to stand up.  *See id.*  Nothing in the video contradicts this allegation; the video is consistent with the use of completely overwhelming force and intimidation by the officers.  Videos #7-8.

Moments later, Mr. Schulte then fell again. This time, he injured his head. His vision blurred and he believed he suffered a concussion. Complaint at 6; Schulte's Declaration at 3; Video #11. The cause and severity of the fall are impossible to deduce from the video alone. *See id*. Again, the officers' bodies obscure Mr. Schulte's when he is on the ground and the immediate seconds before. Video #11. The officers continued to drag Mr. Schulte through a room with holding cells until they reached an elevator. Videos #12-16. This part of the incident, and a second elevator ride, are not captured on camera. While off camera, Mr. Schulte also alleges he was forced to undergo an x-ray at gunpoint, was strip searched, and was made to endure a rectal examination. Complaint at 5.1; Schulte's Declaration at 3.

### 3.    The Recreation Room Off-Camera Assault

After the rectal examination, Mr. Schulte was led back towards his cell. Complaint at 5.1; Schulte's Declaration at 3. But the officers who were searching his cell were not finished, so before they reached his cell, an officer stopped them in the hallway and ordered the others to drag Mr. Schulte into the Recreation Room. Video #28.

The defendants' video footage corroborates, and certainly does not blatantly contradict, Mr. Schulte's allegations of assault in the Recreation Room. Mr. Schulte is seen stumbling into the Recreation Room as the officers shove him from behind. Video #35. Then, Mr. Schulte is seen apparently exchanging words with an officer before being pushed into the wall. Video #35 at 0:28. Mr. Schulte's complaint describes the physically harmful and angry behavior of the officers at that juncture. Complaint at 5.1; Schulte's Declaration at 3-4. The video that the government offered in support of the summary judgment motion depicts Mr. Schulte being shoved into one of the only parts of the room that is not captured by the video. Video #35 at 0:28.

Although the video does not show what happened, it is apparent from the context that Mr. Schulte was forcibly shoved against a wall and crowded by a scrum of officers for more than 12 minutes.  Video #35 at 0:28-12:48.  Mr. Schulte's complaint and declaration describes his pain and injury and the video supports, rather than contradicts, his account.

## ARGUMENT

### I.    This Pre-Discovery Summary Judgment Motion Must Be Rejected

It would be inappropriate to grant Summary Judgment and deny Mr. Schulte the opportunity of discovery and adjudication of this suit.  The limited footage the government produced lacked audio entirely and had significant gaps in the footage.  Thus, it does not blatantly contradict Schulte's claims, as would be needed to grant summary judgement at the current premature stage.  Further discovery, such as complete video clips, accompanying audio, or depositions, would further develop plaintiff's allegations.

### A.  The Movant's Heavy Burden

A Rule 56 motion for summary judgment may only be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The court must give Mr. Schulte, the non-moving party, the benefit of all inferences and credibility determinations.  *See Aulicino v. N.Y.C. Dept. of Homeless Servs.*, 580 F.3d 73, 79–80 (2d Cir. 2009) (discussing the standard and reversing post-discovery grant of summary judgment for defendants in Title VII case).

Here, the movants have an even more difficult burden to meet than in a typically timed motion for summary judgement. In this pre-discovery summary judgment motion, the government asserts that a disjointed set of incomplete, grainy, and silent video images conclusively disposes

of all factual disputes. The law, however, treats pre-discovery and post-discovery summary judgment motions differently—especially when the plaintiff has done nothing to delay or prolong discovery. *See Wexler v. LVNV Funding, LLC*., 2022 WL 16961125, at *3 (S.D.N.Y. Nov. 16, 2022) (noting that courts evaluating Rule 56(d) motions distinguish "situations where discovery has not been conducted and those where a party, having taken discovery, seeks to enlarge discovery"). *Cf. Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 2020 WL 8771255, at *6 (E.D.N.Y. Dec. 29, 2020) (denying discovery where plaintiff had strategically forgone discovery previously).

The Supreme Court has cautioned against the granting of premature summary judgment motions, noting the danger that a plaintiff may be "railroaded" by a premature motion, brought before the opportunity for full discovery. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (noting that the remedies of Rule 56(f) can address such problems but finding that there was full discovery in the case at issue). The Second Circuit has also noted that the "nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment." *Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (quoting *Celotex*, 477 U.S. at 326). Instead, "[t]he nonmoving party must have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)).

The post-discovery summary judgment cases the defendants cite illustrate that reviewing courts frequently remark and rely upon the record of extensive discovery in affirming decisions granting summary judgment motions. *See Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (affirming grant of post-discovery summary judgment where discovery included depositions of multiple company vice-presidents and documents that included a list of all employees who had been terminated in the relevant six-year period and all the details of their

severance packages); *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003) (affirming grant of post-discovery summary judgment based on the depositions of three separate examining eye-doctors); *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (affirming grant of post-discovery summary judgment motion as to one defendant where no evidence linking to that defendant was produced in discovery); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 40 (2d Cir. 2000) (affirming grant of summary judgment where defendant filed motion "[u]pon completion of discovery"); *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 121 (2d Cir. 2011) (affirming summary judgement granted post-discovery); *Marcavage v. City of New York*, 689 F.3d 98, 110 (2d Cir. 2012) (affirming grant of summary judgment after discovery had begun and an audio recording specifically and directly contradicted the plaintiff's account of the events); *Kalfus v. N.Y. & Presbyterian Hosp.*, 476 F. App'x 877, 880–81 (2d Cir. 2012) (affirming grant of summary judgment post-discovery when audio directly contradicted plaintiff's allegation).

The district court cases the government relies on are similarly inapposite to the present context. In *Berman v. Williams*, Judge Koeltl granted an unopposed motion for summary judgment where video evidence completely undermined the plaintiff's claim. 2019 WL 4450810, at *6–7 (S.D.N.Y. Sept. 17, 2019). And, in *Lin v. City of New York*, Judge Engelmayer granted summary judgment only after discovery was already underway. 2016 WL 7439362, at *11–12 (S.D.N.Y. Dec. 21, 2016) (granting summary judgment after plaintiff had already been deposed and where video evidence conclusively refuted plaintiff's allegations of excessive force).

Unlike all these cases, Mr. Schulte has not been allowed to even begin the discovery phase of this litigation. The defendants have twice sought to stay discovery; the second request was granted and that stay remains in force, ECF 97, while this pre-discovery summary judgment motion is pending. Mr. Schulte is forced to litigate this motion with no access to information about

the layout of the MCC, the location of the surveillance cameras, the existence of other cameras or other recording devices, access to medical records, other records in the defendants' exclusive control, and a host of other potential evidence about which Mr. Schulte has not yet had the opportunity to inquire.

The defendants also briefly discuss a handful of pre-discovery summary judgment cases, including *Scott v. Harris*, 550 U.S. 372 (2007), a case they argue at some length.  That case involved a car chase that was captured on a continuous video from beginning to end.  Additionally, the opinion in *Scott* references accompanying audio of at least some of the radio transmissions.  *See id*. at 384.  Subsequent cases, sensitive to the unique facts of *Scott,* more often distinguish the case than follow it.  *See Barrows v. Brinker*, 36 F.4th 45, 51 (2d Cir. 2022) (characterizing as "rare" the cases in which summary judgment is warranted on the basis of the *Scott v. Harris* blatant contradiction standard); *see also Bygum v. City of Montgomery*, 2023 WL 2203591 at *5 (4th Cir. Feb. 24, 2023) (noting that *Scott* is the exception, not the rule and affirming denial of summary judgement where factfinder could rationally disagree with defendants' narrative in the face of ambiguous video).

This case does not present the pellucid record required to deny discovery after a sufficient complaint.  *Kalfus v. New York & Presbyterian Hosp*., 476 F. App'x 877 (2d Cir. 2012), involved a much stronger factual record—two different recordings of the incident.  One was a continuous view from a security camera and the other was created by the photojournalist who was the plaintiff and had himself been arrested.  *See id*. at 880.  The subject was not obscured, the interaction was between just two people, and the event unfolded in a single location.  *See id*. at 881.  Similarly, in *Lin v. City of New York*, 2016 WL 7439362, at *11 (S.D.N.Y. Dec. 21, 2016), the video footage

11

relied on captured the entire arrest in question with no blind spots.  *See Berman v. Williams*, 2019 WL 4450810, at *7 (S.D.N.Y. Sept. 17, 2019) (describing the video as conclusive).

## B.  This Set of Videos is Not Conclusive or Dispositive

The government's sweeping claim that their limited video fragments are dispositive must be rejected.  The video corroborates several aspects of Mr. Schulte's claims and does not conclusively show that the defendants are not liable.  For example, the video shows Mr. Schulte being led backwards, bent over at the waist with his handcuffed arms behind him.  Officers are seen with their hands on his head, handcuffs, or his arms, as well as in contact with other parts of his body.  Videos #3 and 15.  Whether he is being led, or dragged is a matter of inference and interpretation.  In his complaint, and now his declaration, Mr. Schulte describes how he was forced into a painful and very unnatural posture and then dragged through the facility.  Complaint at 4-5; Schulte's Declaration at 2-3.

Other videos show Mr. Schulte falling, or being thrown, to the ground.  There are officers surrounding him, but the viewer cannot see why or how he falls.  The viewer does see a scrum of officers descend upon the space where his prone body must be lying.  Videos #7, 8, 1, 15, and 35 (showing examples of officers shoving Mr. Schulte out of the camera's view).  Another clip shows Mr. Schulte exiting a doorway and being shoved into the outside hallway, where no camera captures the footage.  Video #36.

The video corroborates, rather than refutes Mr. Schulte's statement in his complaint, and declaration, that he was shoved into a corner that is outside of the camera's view at a key moment in the action.  Video #35.  For example, Mr. Schulte asserts that he was shoved aggressively and injuriously against a wall, but only the relevant officers' backs can be seen in the footage.

12

Complaint at 5.1; Schulte's Declaration at 3; Video #35.  Mr. Schulte is off camera at the key

moment.  *See id.*  The video only shows the officers standing and apparently looking towards Mr.

Schulte.  *See id.*  Giving all the credibility determinations and inferences to Mr. Schulte—the

nonmoving party—each of these is more than adequate ground to proceed to discovery in this case.

## C.  The Facts Support a Remedy for Mr. Schulte

Mr. Schulte's affirmative claim rests in the Federal Tort Claims Act ("FTCA").  The

limited videos the government provided raise a material issue of fact, which prevents summary

judgement here.

### 1.    FTCA

The FTCA gives Mr. Schulte a remedy for physical and other injuries caused by the

negligence of his jailers.  28 U.S.C. §§ 1346, 2671 et seq.  The FTCA provides "a limited waiver

. . . [of] sovereign immunity [that] allows for a tort suit against the United States under specified

circumstances."  *Liranzo v. United States*, 690 F.3d 378, 385 (2d Cir. 2012).  A claim for "personal

injury," that is "caused by the negligent or wrongful act . . . of any employee of the Government,

. . . under circumstances where the United States, if a private person, would be liable to the claimant

in accordance with the law of the place where the act or omission occurred," are cognizable.

*F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994); *see also* 28 U.S.C. § 1346(b)(2) (providing a physical

injury requirement); 42 U.S.C. § 1997e(e) (reiterating a physical injury requirement).

Mr. Schulte seeks a remedy for the physical and other injuries caused when the

officers unreasonably and negligently used severe physical force against him.  For example, videos

show Mr. Schulte being forced into a bow position and being shoved.  Videos #1, 7, 8, 11, 16, and

35.  The videos the government revealed support a finding of compensable injury against the

defendants; a fair viewer sees the unreasonable, overwhelming force and aggression of the responding team members, which overpowers the single, relatively small man who is their target. Mr. Schulte is seen shoved and dragged through the halls. The video corroborates, and certainly does not contradict his statement that he was shoved against the wall in the recreation room but does not show what happened in the twelve minutes that ensue. He has described to the Court how his wrists and shoulders were injured and that he experienced grave pain, overwhelming coercion and other harms that are cognizable as an FTCA case. Complaint at 5; Schulte's Declaration at 2-4.

Similarly, the video corroborates that Schulte was roughly handled and fell to the ground several times. In his declaration he describes being shoved or tripped and injuring his head. Schulte's Declaration at 3. This too is an injury subject to redress under the FTCA. The defendants' assertion that this video is conclusive proof foreclosing any remedy must be rejected as legally and factually unsound. The Summary Judgment motion must be denied.

### 2.   *Bivens*

Mr. Schulte's *Bivens* claims are discussed in United States Magistrate Judge Gabriel Gorenstein's pending Report & Recommendation; at this juncture, summary judgement is not warranted on the *Bivens* claim. ECF 93. If there is a compensable injury under *Bivens*, there is a material dispute of fact about that claim under Rule 56. Mr. Schulte has indicated that his medical needs were ignored, his medication was confiscated, and was not replenished for some time. For purposes of opposing this motion, there are material facts in dispute about the *Bivens* claim.

The defendants' pre-discovery Summary Judgment motion must be rejected. There are disputed material facts and Mr. Schulte should be permitted to engage in discovery. Information

14

in the exclusive control of the defendants, including information about how these events unfolded and institutional medical and other records must be disclosed.

## II.   Alternatively, If the Court Does Not Deny Summary Judgement, It Should Defer Consideration as per Fed. R. Civ. P. 56(d)

Mr. Schulte alternatively seeks relief under Rule 56(d) which provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:  (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order" pursuant to Federal Rules of Civil Procedure 56(d).  FED R. CIV. P. 56.  The Second Circuit has highlighted that it is well established that the trial court may only properly deny further discovery under Rule 56(d) "if the nonmoving party has had a fully adequate opportunity for discovery."  *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989).

Here, all the evidence, save Mr. Schulte's own testimony, is in the control of the defendants.  Without discovery, Mr. Schulte has no way of learning about and obtaining any other video or any audio that may exist, examining medical records or other institutional records or even simply understanding the physical layout of the location where these events unfolded. Additionally, as the attached declaration of counsel notes, the restrictive conditions under which he is held have complicated responding to this motion.  Schulte's Declaration at 2.

While we urge the Court to deny this summary judgment, in the alternative, we also urge that Mr. Schulte has shown that he has not yet had access to relevant, admissible, discoverable evidence that is neither cumulative nor speculative.  *See Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 151 (2d Cir. 2016) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir.

1994)). Accordingly, we urge the Court to either deny the motion, or defer it, and permit discovery to move forward regardless pursuant to Rule 56(d).

**CONCLUSION**

For all the foregoing reasons, Mr. Schulte respectfully requests that the Court denies Defendants' summary judgment motion Pursuant to Federal Rule of Civil Procedure 56(a) or grant a remedy pursuant to Federal Rule of Civil Procedure 56(d) or grant such other or further relief as the Court deems just and proper.

Dated: New York, New York
       April 17, 2023

                                                  Respectfully Submitted,
                                                  Lincoln Square Legal Services, Inc.


                                                  By:   ___/s/_____
                                                  Michael W. Martin
                                                  Ian Weinstein
                                                  Lincoln Square Legal Services, Inc.
                                                  Fordham University School of Law
                                                  150 West 62nd St, Ninth Floor
                                                  New York, NY 10023
                                                  212 636 6934

Legal Interns:
Nico Corti
Rachel Ehrlich
Callie Ives
Lamar Smith